STATE, Respondent, v. STUDLER, Appellant.

*No. State 3. Submitted under sec. (Rule) 251.54 November 28, 1973.—Decided December 21, 1973.*
(Also reported in 213 N. W. 2d 24.)

For the appellant the cause was submitted on the brief of *Frank Vazquez* and *Trimberger & Vazquez,* all of Neillsville.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Robert D. Martinson,* assistant attorney general.

CONNOR T. HANSEN, J.   The issue presented on this appeal is whether the sentence is excessive and an abuse of discretion and a denial of equal protection of the law.

On July 15, 1972, the defendant and two accomplices followed Lyle Cary to his home on a farm in Clark county, Wisconsin. Lyle Cary lives on the farm with his wife, Mildred Cary. Jim Hom, one of the accomplices, left the car with a .22 pistol tucked in his belt and went to the door of the Cary's house while the defendant, his wife, and David Studler, the defendant's uncle, waited in the car. Lyle Cary had seen Hom walking toward the house and went to the back door of the house, believing Hom would come to that door. Mildred Cary saw Hom with the gun on her husband when she opened the front door. Hom demanded money. The Carys were able to slip back into their home and close and lock both the front and back doors. Mildred Cary went to the phone to get help but Hom had pulled off the connection outside and the phone was dead. Hom then demanded that they open the door or he would shoot his way in. Hom told David Studler to bring a shotgun from the car and he (Hom) fired two shots into the front door thereby blowing off the lock. The defendant, Hom, and David Studler entered the house. The Carys were hiding in their clothes closet in their bedroom. The defendant and his accomplices demanded that they come out and they did. Hom held the shotgun and again demanded their money. Mr. Cary gave the defendants $19 from his billfold and Mrs. Cary gave them $40. David Studler used a roll of black plastic tape to tie the Cary's hands, and he tore up a bedsheet which the defendant used to tie their feet together. The three men then searched

part of the house and David Studler carried out a stereo while the defendant carried out a portable radio and hunting knife. David also took an axe from the garage and removed the coil wires from the Cary's automobile and took their car keys.

The defendant was subsequently arrested with his accomplices and charged with armed robbery (sec. 943.32 (1) (b), Stats.); burglary while armed with a dangerous weapon (sec. 943.10 (1) (a)); and reckless use of a firearm (sec. 941.20 (2) (a)). The defendant signed a statement detailing his involvement with his accomplices in various crimes which they had committed during the three days from July 12, 1972, until they were apprehended on July 15th.

The district attorney agreed to dismiss the charges of burglary and reckless use of weapons, and the defendant pled guilty to the charge of armed robbery, party to a crime.

When accepting the plea of guilty from the defendant, the trial court explained to the defendant the constitutional rights he was waiving by entering his plea of guilty and then determined that the defendant was voluntarily and knowledgeably pleading guilty. The defendant acknowledged signing the statement, which was admitted into evidence, and he told the judge its contents were true. Mildred Cary testified to further establish a factual basis for the defendant's plea, and the defendant stated that her testimony was correct.

No conviction record was available at the time of sentencing but the defendant admitted that he was eighteen years of age; had been confined as a juvenile for six months for burglary; and had been released only four months prior to his involvement in this crime.

When imposing sentence, the judge said that he was cognizant of the cooperation the defendant had given the sheriff in his investigation and that the defendant

was "not a major operator in this escapade." However, the judge said that two factors indicated a need for this particular sentence. The defendant had only recently been released for burglary and had obviously not been rehabilitated. Also, the statement signed by the defendant indicated that this crime was the culmination of an affair of ". . . burglarizing, breaking and entering or attempting to do so," which the defendant and his accomplices had perpetrated during a period of three days, and the defendant could have disassociated himself from the two other men when they first commenced these criminal activities.

In motions after trial the defendant argued that his accomplice, Hom, who pled guilty before another judge, received a five-year sentence, and that, therefore, the ten-year sentence given the defendant was excessive and an abuse of discretion. We are not impressed with this argument.

This court in *Hayes v. State* (1970), 46 Wis. 2d 93, 101, 175 N. W. 2d 625, recognized ". . . that a trial court may exercise its inherent power to change and modify its judgments after the execution of the sentence has commenced and the term ended." Subsequently, in *State v. Foellmi* (1973), 57 Wis. 2d 572, 582, 205 N. W. 2d 144, the court said:

". . . A trial court should not reduce a sentence on 'reflection' alone or simply because it has thought the matter over and has second thoughts. It must base its modification on 'new factors' brought to its attention."

The fact that a different judge imposed a lesser sentence upon an accomplice is not a "new factor" within the meaning and intent of *State v. Foellmi, supra.* Such a fact does not establish that the trial court in the instant case abused its discretion in either the imposition of the sentence or its denial of post-trial motions. The

imposition of a lesser sentence upon an accomplice by a different judge does not ipso facto constitute such lesser sentence as the common denominator for the sentence to be imposed on all parties to a crime. There is nothing in the record to indicate what motivated the trial judge who imposed a five-year sentence upon Hom.

In *McCleary v. State* (1971), 49 Wis. 2d 263, 275, 182 N. W. 2d 512, this court said:

". . . The legislature intended that individual criminals, though guilty of the same statutory offense, were not necessarily to be treated the same but were to be sentenced according to the needs of the particular case as determined by the criminals' degree of culpability and upon the mode of rehabilitation that appears to be of greatest efficacy. . . ."

In *State v. McClanahan* (1972), 54 Wis. 2d 751, 757, 196 N. W. 2d 700, this court considered a defendant's argument that his sentence was discriminatory 'and excessive because it was substantially greater than that of his codefendant. The court again held:

". . . This court has frequently stated that a disparity in sentences does not, in and of itself, constitute a violation of due process or equal protection. *Price v. State* (1967), 37 Wis. 2d 117, 137, 154 N. W. 2d 222; *McCleary v. State* (1971), 49 Wis. 2d 263, 271, 272, 182 N. W. 2d 512. . . ."

The trial court denied the post-trial motion and stated that the defendant had originally been charged with three felonies (total maximum sentence of fifty-three years) but that two charges were dropped after plea negotiations. Moreover, the trial court stated that, while it was evident that the defendant had not been the "prime mover" in this offense, it was clear that he had only recently been released for another offense before he participated in this crime. Again reiterated were the

reasons that the trial court had given at the original sentencing.

It is argued on appeal that the defendant had no worse record than his codefendants, both of whom received lighter sentences. This is not a part of the record, but assuming it to be true, it is, nonetheless, unpersuasive. Nothing in this record supports the fact that all three defendants had ". . . substantially the same case histories," therefore *Jung v. State* (1966), 32 Wis. 2d 541, 553, 145 N. W. 2d 684, cited by defendant, is inappropriate. Also, there is nothing in the record that would indicate that the trial court ". . . arbitrarily singled out a minor defendant for the imposition of a more severe sentence than that imposed upon the codefendants, . . ." as in *United States v. Wiley* (7th Cir. 1960), 278 Fed. 2d 500, 503.

The very nature of this crime justifies the imposition of a sentence which is one third the maximum. The trial judge articulated his reasons for the imposition of such a sentence. The sentence imposed in this case was not excessive; the trial court did not abuse its judicial discretion; and the defendant was not denied the equal protection of the law.

*By the Court.*—Judgment and order affirmed.