STATE, Respondent, v. JACKSON, Appellant.

*No. State 60.   Argued April 10, 1975.—Decided June 30, 1975.*
(Also reported in 230 N. W. 2d 832.)

For the appellant there was a brief and oral argument by *Lloyd A. Barbee* of Milwaukee.

For the respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief was *Victor A. Miller,* attorney general.

DAY, J. The issue raised on this appeal is, should the defendant be permitted to withdraw her plea of guilty to solicitation of prostitution (party to a crime), contrary to secs. 944.32[1] and 939.05,[2] Stats. 1971, on the basis of

[1] "944.32 **Soliciting prostitutes.** Whoever intentionally solicits or causes any female to practice prostitution or establishes any female in a place of prostitution may be fined not more than $1,000 or imprisoned not more than 5 years or both. If the female is under the age of 18, the defendant may be fined not more than $2,000 or imprisoned not more than 10 years or both."

[2] "939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

". . .

"(b) Intentionally aids and abets the commission of it; . . ."

her claim that a manifest injustice has been done? We conclude that the defendant has made no such showing on appeal and that the judgment should be affirmed.

On October 9, 1973, the defendant Johnnie Mae Jackson was arrested for solicitation of prostitution. Testimony produced in support of her later plea of guilty to the offense showed that an employee of the Wisconsin department of justice, division of criminal investigation, met the defendant on August 21, 1973. The next day she met him in a tavern in Milwaukee and offered to obtain the services of a prostitute for him for $30 to $40 and then, through one Cornelius Bell, did in fact solicit a prostitute for this purpose. The prostitute met the agent, Mr. Bell and the defendant in the tavern, then left with the agent and they went to her apartment where the agent then arrested the prostitute. The defendant was also arrested. Following her arrest the defendant waived the right to a preliminary hearing on November 5, 1973. At this hearing before the Honorable JOHN L. COFFEY, defendant moved the court for a substitution of judge, which motion was granted. The Honorable CHRIST T. SERAPHIM was assigned the case. Later on November 5th, the defendant entered a plea of guilty to the charge against her following a pretrial agreement between the state and Mrs. Jackson and her attorney whereby two counts of pandering against Mrs. Jackson were dismissed but, pursuant to the agreement, could be "read-in" and considered in the sentencing. One of the charges dropped was a misdemeanor and arose out of the case involving the state agent in the tavern and had to do with soliciting the agent for the prostitute.[3] The other charge dropped

---

[3] "944.33 **Pandering.** (1) Whoever does any of the following may be fined not more than $200 or imprisoned not more than 6 months or both:

"(a) Solicits another to have nonmarital sexual intercourse or to commit an act of sexual perversion with a female he knows is a prostitute; . . ."

was an alleged violation of sec. 944.33 (2), Stats.[4] This was a charge of receiving compensation from the earnings of a prostitute and grew out of a separate incident arising from an interview with a prostitute by the state agent in which she had stated that she worked for the defendant and that the defendant received a portion of her earnings. It is clear from the record that Mrs. Jackson, the defendant, understood the significance of the read-in of the two dropped charges and the fact that they could be considered by the judge in his final sentence. Pursuant to recommendation by the state, a presentence examination and investigation was conducted of the defendant and a report made to the court at the time of the sentencing. On December 5, 1973, Judge SERAPHIM sentenced the defendant to the maximum term of not more than five years in the women's prison. Judgment and sentence were entered on December 5, 1973.

Throughout these proceedings the defendant was represented by counsel. After her conviction, defendant changed counsel and on March 4, 1974, filed a postconviction motion for reduction of sentence or, in the alternative, vacation of the guilty plea or a new trial in the interest of justice. On April 12, 1974, Judge SERAPHIM heard these motions and denied them.

The issue on appeal is, did the trial court abuse its discretion in refusing to permit the defendant to withdraw her guilty plea? Defendant's counsel asserts five grounds in support of the contention that the guilty plea should have been withdrawn.

In *State v. Reppin* (1967), 35 Wis. 2d 377, 384, 385, 151 N. W. 2d 9, this court said that the motion to vacate a guilty plea and for a new trial is a motion directed to

---

[4] "(2) If the accused received compensation from the earnings of the prostitute, he may be fined not more than $5,000 or imprisoned not more than 10 years or both."

the discretion of the court in the interest of justice; that such discretion is legal discretion governed by principles of law; that if the accused seeks to withdraw the guilty plea he has the burden of showing an adequate ground for withdrawal and that burden is met only by a showing of clear and convincing evidence. *Accord, Craker v. State* (1974), 66 Wis. 2d 222, 223 N. W. 2d 872; *Morones v. State* (1973), 61 Wis. 2d 544, 213 N. W. 2d 31; *State v. Bagnall* (1973), 61 Wis. 2d 297, 212 N. W. 2d 122. In *Reppin*, at pages 385, 386, this court also adopted the following standards to apply to the determination of whether to allow withdrawal of a guilty plea: American Bar Association Project on *Minimum Standards for Criminal Justice—Pleas of Guilty* (Tentative Draft, February, 1967 [now approved]), Part II, pp. 9, 10:

"Part II. Withdrawal of the plea.
"2.1 Pleas withdrawal.
"(a) The court should allow the defendant to withdraw his plea of guilty or nolo contendere whenever the defendant, upon a timely motion for withdrawal, proves that withdrawal is necessary to correct a manifest injustice.
"(i) A motion for withdrawal is timely if made with due diligence, considering the nature of the allegations therein, and is not necessarily barred because made subsequent to judgment or sentence.
"(ii) Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:
"(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;
"(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;
"(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or
"(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

"(iii) The defendant may move for withdrawal of his plea without alleging that he is innocent of the charge to which the plea has been entered.

"(b) In the absence of a showing that withdrawal is necessary to correct a manifest injustice, a defendant may not withdraw his plea of guilty or nolo contendere as a matter of right once the plea has been accepted by the court. Before sentence, the court in its discretion may allow the defendant to withdraw his plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

This court has especially emphasized the point that:

"'. . . on timely application, the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence. . . .'" Pulaski v. State (1964), 23 Wis. 2d 138, 143, 126 N. W. 2d 625, quoting from Kercheval v. United States (1927), 274 U. S. 220, 47 Sup. Ct. 582, 71 L. Ed. 1009.

Furthermore, the trial judge must personally question the defendant and "exposes the defendant's state of mind on the record." The record itself must ". . . reveal that the plea was voluntary and that the defendant understood both the charge and its consequences." Ernst v. State (1969), 43 Wis. 2d 661, 672, 170 N. W. 2d 713.

The first contention advanced by the defendant as to why the motion for withdrawal of the guilty plea should have been granted was that there was an inadequate appearance before Judge COFFEY on the defendant's request for a substitution of judge. The record shows that at the time of the hearing before Judge COFFEY the following exchange occurred:

"The Court: Do you wish to file a substitution in this case of judges?

"Mr. Jones [attorney for defendant] : Yes, Your Honor. Are you talking to her?

"Defendant: Yes, sir.

"The Court: All right. The substitution of judges is received by this court and ordered to be re-assigned."

Defendant argues that this examination was inadequate and that more questioning of the defendant as to her desire for a substitution of judges should have been engaged in by the court. No authority is cited in support of this contention. The record shows that the defendant had followed sec. 971.20 (1) and (2), Stats.[5] The written request having been filed, no more was required of the trial judge than an acknowledgement of the filing and assigning the case to another judge. However, we can only conclude from the exchange between the judge and the defendant's attorney that the record set forth above makes it clear that the defendant reaffirmed what was in her written request for a substitution. We also fail to see how this would have any connection with an argument to vacate a guilty plea. There is nothing in the record nor is there any allegation that events surrounding the defendant's request for substitution of judge had anything to do with or in any way affected her decision to plead guilty. It is not contended that she did not in fact want a substitution of judges or that the substitution occurred without her consent or against her will; the record shows the contrary.

The next argument of the defendant is that the plea of guilty should not have been accepted. Defendant argues that she did not knowingly and intelligently and rationally enter the plea of guilty. The allegation is made in the brief that she was "shuttled from the originally assigned judge to the clerk's office and the substituted

[5] "971.20 **Substitution of judge.** (1) The defendant may file with the clerk a written request for a substitution of a new judge for the judge assigned to the trial of that case. Such request shall be signed by the defendant personally and shall be made before making any motion or before arraignment. . . .

"(2) Upon the filing of such request in proper form and within the proper time the judge named in the request shall be without authority to act further in the case except to set bail if requested by the defendant. . . ."

judge where a plea of guilty was entered too fast, given the total emotional and psychological circumstances . . ." and that a recitation of the rights which she was waiving was done in "rapid though audible questioning sing-song pattern. . . ." There is nothing in the record to support these assertions made in the brief. There is no way of determining if the rights were read in a "sing-song" pattern; whether she was rushed from one court to another; and no way from the record to ascertain whether the totality of these "psychological circumstances" recited in the brief had the effect of precluding an intelligent decision to plead guilty. She did, after all, have the advice of counsel and the record shows that she discussed the matter with him.

"The rule is well established that the review of the supreme court is limited to the record . . . ." *Schimke v. Milwaukee and Suburban Transport Corp.* (1967), 34 Wis. 2d 317, 320, 149 N. W. 2d 659. *Accord, Sedlet Plumbing & Heating v. Village Court, Ltd.* (1973), 61 Wis. 2d 479, 483, 212 N. W. 2d 681.

This court enunciated six preconditions to the acceptance of a plea of guilty in *Ernst v. State, supra,* page 674. The trial court is required:

"1.   To determine the extent of the defendant's education and general comprehension.
"2.   To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries.
"3.   To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty.
"4.   To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused.
"5.   To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him."
6.   To determine "that the conduct which the defendant admits constitutes the offense charged in the indictment

or information or an offense included therein to which the defendant has pleaded guilty."

It is clear from the record that these tests were satisfied. The defendant was represented by counsel at the time she entered her plea; she had discussed the matter with him. She was advised of the effect of the pretrial agreement with the state regarding dismissal of the pandering counts, but allowing them to be "read-in" and considered for purposes of sentencing. She was informed of the maximum penalties, was questioned about her education and her desire to waive her constitutional rights and she then voluntarily and intelligently pleaded guilty. The state agent involved in the case was sworn and examined concerning the facts constituting the offense the defendant pleaded to as well as the two pandering counts which were dismissed. No affidavit and no testimony or evidence of any sort is offered in support of the defendant's contentions that she did not know or understand the proceedings and the effect of her plea of guilty.

The third contention of the defendant as to why the plea of guilty should be withdrawn is that the sentence was excessive. No relationship is shown between the sentence that was received and entry of the plea of guilty or why it should be withdrawn. The reason pointed out in *State v. Reppin, supra,* for withdrawal of a plea of guilty is that it is necessary to correct a manifest injustice. Unless there was an agreement about sentencing, which is not true in this case, and where the defendant was advised of the maximum sentence that she could receive under her guilty plea, we find nothing in the length of sentence imposed which bears on the voluntariness and intelligence of her decision to enter a plea of guilty.

The question as to the sentence would be whether it amounted to an abuse of discretion. The defendant argues that the discretion was exercised "without explained judicial reasoning process." On the contrary,

the record shows that the judge, prior to sentencing, read an extensive presentence report. At the time of sentencing, the judge referred to the defendant as ". . . a woman who has been trafficking for money from the bodies of other women, the greatest form of degradation I think that can occur in any society, . . ." He also based his sentence on the defendant's long record of involvement in prostitution and upon the "read-in" of the two charges that were dismissed, one of which carried a maximum penalty of ten years.

"This court has frequently stated that, in the exercise of discretion, a substantial sentence may be imposed to emphasize the seriousness of the crime." *Bastian v. State* (1972), 54 Wis. 2d 240, 246, 194 N. W. 2d 687.

The presentence report showed that Mrs. Jackson had a record of nine other offenses in Milwaukee, between 1932 and 1954, most of which related directly to prostitution. The presentence report recommended that the defendant receive the maximum period of incarceration. From all these factors which went into the imposition of sentence in this case, we cannot say from the record that the judge abused his discretion.

The defendant also argues that the disparity between her sentence and that received by a codefendant, Mr. Bell, shows that her sentence was excessive. The judgment roll shows that on January 25, 1974, Mr. Bell pleaded guilty to an amended charge of pandering, sec. 944.33 (1), Stats., that his sentence was withheld and Mr. Bell was placed on probation for one year.

"This court has frequently stated that a disparity in sentences does not, in and of itself, constitute a violation of due process or equal protection." *State v. McClanahan* (1972), 54 Wis. 2d 751, 757, 196 N. W. 2d 700; *State v. Studler* (1973), 61 Wis. 2d 537, 542, 213 N. W. 2d 24.

The only requirement is "substantially the same sentence for persons having substantially the same case histories."

*Jung v. State* (1966), 32 Wis. 2d 541, 553, 145 N. W. 2d 684. There is no information in the record concerning Mr. Bell's case history; also this record does not show whether or not he had any charges which had been dismissed and had been "read-in" against him. The reliance of defendant on *United States v. Wiley* (7th Cir. 1960), 278 Fed. 2d 500, is not in point. In that case the court of appeals set aside the district court's sentence of Wiley because it found that the district court had "without any justification, arbitrarily singled out a minor defendant for the imposition of a more severe sentence than that imposed upon the co-defendants." In that case Wiley was an accessory without any prior criminal record and was sentenced to three years in prison, while the principal who had an extensive prior felony record and had committed two offenses while out on bond received only two years in prison. The court indicated it believed Wiley's decision to ask for a trial played a major role in the district court's sentencing decision and such was an improper consideration. No comparable facts are presented by the record before us in this case.

The fourth contention of the defendant is that her motion to withdraw her guilty plea or for a reduction of sentence was dismissed too summarily. Defense counsel states in his brief, "The Judge's ears and mind were closed." This does not go to the merits of the motion; rather, it alleges that too little time was spent in considering it. To support a withdrawal of the plea of guilty, it is necessary to show not that the motions were dismissed summarily, but that they were dismissed wrongly, that is, to show that they should have been granted. This has not been done. The record does show that the court summarily reviewed the facts and concluded his initial decision as to sentencing was correct. At that hearing the defendant produced no evidence by way of affidavit or testimony in support of her motions and no objection is shown in the record as to the manner in which the hear-

ing was conducted and we must conclude that no basis has been shown here for a withdrawal of the guilty plea and the ordering of a new trial.

The fifth contention of the defendant is that the presentence investigation was "excessively biased, incompetent and inflammatory." Our reading of the presentence report is that it does not reflect bias and is not inflammatory nor incompetent. Much of the material objected to in the report falls within the general category of information about the defendant's personality and social circumstances and evidence of a general pattern of behavior, which is in turn evidence of character. Such information is properly included in a presentence report. *Waddell v. State* (1964), 24 Wis. 2d 364, 367, 368, 129 N. W. 2d 201. More speculative material is contained in a section entitled, "Agent's Impressions" and there is nothing to indicate that the judge did not treat them as such. There is great latitude in what material is properly included in the presentence report and, therefore, properly considered by a judge in arriving at a sentence decision. This court has said:

"There is a clear distinction between what is admissible as evidence in a trial and what may be considered as part of a presentence investigation made after a judgment of guilt has been entered. . . . [T]he very purpose of a presentence report is to give as complete as possible a history and background of the convicted defendant in order that the sentencing court may fairly decide the appropriate disposition of the case." *Deja v. State* (1969), 43 Wis. 2d 488, 492, 493, 168 N. W. 2d 856.

We fail to note bias in the report. Mrs. Jackson is described as a "manipulative, imposing" personality and the maximum period of incarceration permitted under the statute is recommended; however, the report also points out that she is intelligent, neat and clean; that her home is equally well-kept and that she appeared to be adjusting well to a new job she had taken as a cook. The report, if

it is biased, is biased against the nature of the particular conduct she engaged in which resulted in the charges to which she pleaded guilty. It is clear also from the record that the judge regarded the crime as a serious one apart from recommendations made in the presentence report.

At the beginning of the sentencing hearing the district attorney and defendant's trial counsel informed the trial court they had agreed to an adjournment until that afternoon. The reasons for such agreement are not at all clear from the transcript. The trial court refused to adjourn the matter and both counsel appear to have readily acquiesced in this decision. No objection was entered. No request for an adjournment for purposes of responding to the presentence report was made. Defendant's trial counsel did not make a specific request to postpone sentencing to provide opportunity either to read or to refute any part of the report. The trial court asked the defendant if there was anything she wanted to say before he pronounced sentence or any reason why he should not pronounce sentence, to which she responded, "No, sir." Under these circumstances we can find no abuse of discretion in the trial court's refusal to adjourn the sentencing.

We conclude, therefore, that the trial court did not err in denying the motion to withdraw the guilty plea and for a new trial and that there was no abuse of discretion in the imposition of the sentence or in the denial of the motion to reduce it.

*By the Court.*—Judgment affirmed.