ERNST, Plaintiff in error, v. STATE, Defendant in error.

*No. State 46. Argued September 3, 1969.—Decided September 30, 1969.*
(Also reported in 170 N. W. 2d 713.)

664

For the plaintiff in error there were briefs and oral argument by *James H. McDermott,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom

on the brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *Roger P. Murphy,* district attorney of Waukesha county.

HANLEY, J. The sole issue presented on this review is whether the trial court erred in denying defendant's postconviction motion to withdraw his pleas of guilty.

In *State v. Reppin* (1967), 35 Wis. 2d 377, 385, 151 N. W. 2d 9, this court adopted the "manifest injustice" test, whereby the defendant should be permitted to withdraw his plea of guilty if he is able to prove by clear and convincing evidence that his plea was made under any of the following nonexhaustive situations:

" '(1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;

" '(2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;

" '(3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

" '(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.' "

The defendant contends that since he has shown by clear and convincing evidence that situations (1) and (3) existed at the time of his plea, the trial court erred in denying his motion to withdraw the pleas.

In claiming that he was denied effective assistance of counsel, he asserts that his attorney, who had conferred with him for only five minutes, failed to inform him of his constitutional rights. He points to the fact that he was not informed of the possibility of excluding an allegedly coerced confession and certain evidence which he now claims was obtained through an unlawful search and seizure.

The state argues that the allegations as to constitutional errors are immaterial and points to *Hawkins v. State* (1965), 26 Wis. 2d 443, 132 N. W. 2d 545, which held that where a plea of guilty is voluntarily and understandingly entered by one who is assisted by counsel, objections to alleged violations of constitutional rights which occurred prior to the plea are waived even though such violations were a direct cause of entering the guilty plea. The circumstances under which the same would be true if one were not represented by counsel were not delineated, but in *State v. Biastock* (1969), 42 Wis. 2d 525, 532, 167 N. W. 2d 231, this court stated that

". . . if a defendant was not fully aware of a potential challenge to possible violations of his constitutional rights and his plea of guilty was the direct result of and caused by these possible constitutional violations, *Hawkins* would permit the defendant, in this limited situation, to raise such constitutional objections in the petition for the withdrawal of the guilty plea."

In *Biastock* there was no allegation that the accused was unaware of possible violations of his constitutional rights at the time he pleaded guilty. The court therefore refused to allow him to raise such issues in his motion to withdraw the plea. In the instant case such issues were properly raised in the motion because the defendant asserted that by virtue of his "ineffective" counsel he was "unaware" of the potential challenge to the admissibility of the allegedly coerced confession and the tainted evidence. If in fact he had been denied a relevant constitutional right, he would have been able to withdraw his plea as of right. *Creighbaum v. State* (1967), 35 Wis. 2d 17, 29, 150 N. W. 2d 494.

Although this defendant may well have been unaware of the potential challenges to possible constitutional violations, the fact that an attorney does not discuss them does not in all cases render one "unaware." Subsequent to the

hearing of the defendant's motion the trial court issued its findings of fact and conclusions of law in which it noted that ". . . the extensive record of the defendant justifies the Court in concluding that he was knowledgeable as to legal procedures involving criminal offenses." However, assuming *arguendo* that he was unaware of potential challenges to constitutional violations, the court which heard the motion found that ". . . the testimony of the defendant that he was denied his constitutional rights is without substance."

This court has continually stated that it would not upset factual findings of the trial court unless contrary to the great weight and clear preponderance of the evidence. *Schroedel Corp. v. State Highway Comm.* (1968), 38 Wis. 2d 424, 157 N. W. 2d 562. Upon presentation of the motion the trial court heard the defendant's direct testimony as well as his cross-examination. Having heard such testimony the court found ". . . From the record it is apparent that the defendant's memory is dimmed by the passage of time and that his testimony at this hearing is not reliable. . . ."

In asserting that he has met his burden of proof as to his allegations of constitutional violations, the defendant points to the fact that the state failed to present any witnesses to testify at the hearing of his motion. In *Mueller v. State* (1966), 32 Wis. 2d 70, 145 N. W. 2d 84, however, it was stated that a court is not bound to accept the accused's contentions as constituting facts.

"Questions of fact are for the trial court to determine and it is not required to give full credence to the testimony of accused. . . ." 22 C. J. S., *Criminal Law*, p. 1161, sec. 421 (5).

Just as the trial court is not obligated to accept the defendant's statements as verities, this court is not obligated to upset the findings of the trial court and thereby

under *Creighbaum* allow the defendant to withdraw his plea as of right.

Regardless of any actual constitutional violations, the defendant apparently argues that an attorney's failure to advise as to the admissibility of suspected evidence renders him "ineffective" within the meaning of situation (1) of the "manifest injustice" test. Although not knowing the admissibility of certain evidence may diminish the intelligence with which the defendant enters his plea, the state's position is that

"When defense counsel makes sure that the defendant understands the charges, is guilty of them, wishes to plead guilty to them and understands the possible consequences of doing so he has performed his duty. He has no obligation to try to talk a guilty defendant into pleading not guilty and it is only when a defendant wishes to plead not guilty that questions about the admissibility of evidence at a trial arise."

This position appears to be well taken when viewed in light of the tremendous burden which would be imposed upon court-appointed attorneys if they were required to make a detailed study of the evidence in order to withstand the accusation of "ineffectiveness" which would thereby stain their professional reputations and automatically vitiate the pleas entered on behalf of their clients.

In *State v. Willing* (1968), 39 Wis. 2d 408, 159 N. W. 2d 15, this court held that to establish "ineffective" assistance of counsel, the defendant must show that the representation was of such low competence as to constitute no representation at all. There, as in the case at bar, the attorney conferred with his client for only a brief time (five to ten minutes), yet the court held this was insufficient to establish that there was "no representation at all." In so holding the court stated that

". . . Before the plea was entered, retained counsel conferred with the defendant. He explained the charges to the defendant and was of the opinion that he understood them. In the conference, they discussed the situation and counsel was convinced of defendant's guilt and was satisfied that defendant was equally convinced of his own guilt. Possible penalties were discussed. The defendant knew that upon conviction he could be sentenced to imprisonment in the state prisons. . . . Counsel was also of the opinion that the plea of guilty was freely, voluntarily and intelligently made. The conference was not of long duration. However, in view of the foregoing circumstances, it cannot be said that counsel's representation was ineffective under the previously enunciated standards of *Pulaski, Eskra* and *Rivera.*" [1]

Defendant contends his counsel conferred with him for only five minutes prior to entry of his pleas of guilty. The trial court obviously found to the contrary stating, ". . . defense counsel could not have become so thoroughly familiar with all aspects of the case in five minutes, as alleged by the defendant . . ." The record herein supports this finding and clearly shows that during the pre-plea conference the defense counsel and defendant did discuss all material matters.

The events surrounding the crimes and the apprehension of the defendant were discussed in the conference, since the defense attorney described them during his plea for leniency in sentencing.

The fact that the defendant admitted his guilt to the authorities was also discussed in the conference. This was revealed by the defendant's testimony on cross-examination and further, by the content of the plea for leniency in sentencing in which counsel made much of the fact that the defendant "readily admitted the offenses."

---

[1] *Pulaski v. State* (1964), 23 Wis. 2d 138, 148, 126 N. W. 2d 625, certiorari denied, 379 U. S. 862, 85 Sup. Ct. 124, 13 L. Ed. 2d 65; *Eskra v. State* (1965), 29 Wis. 2d 212, 223, 138 N. W. 2d 173; *Rivera v. United States* (9th Cir. 1963), 318 Fed. 2d 606, 608.

The record discloses that counsel in the present case did everything and more than counsel in the *Willing Case*. In addition, he made a very effective plea for leniency in sentencing since the defendant, a chronic offender, was given less than one-tenth of the sentence which could lawfully have been imposed upon conviction.

In attempting to establish his original attorney's "ineffectiveness" the defendant asserts that the state's failure to call his former attorney raises an inference that his representation was "ineffective."

"The general rule is that the failure of a party to call a material witness within his control, or whom it would be more natural for such party to call than the opposing party, raises an inference against such party. . . ." *Feldstein v. Harrington* (1958), 4 Wis. 2d 380, 388, 90 N. W. 2d 566.

In this case, however, it is immaterial whether his original attorney's testimony would have substantiated or negated his "effectiveness." Regardless of which inference is to be properly drawn from his failure to testify, such inference is merely persuasive rather than probative. *Rudy v. Chicago, Milwaukee, St. Paul & Pac. R. R.* (1958), 5 Wis. 2d 37, 92 N. W. 2d 367. There was ample discrepancy between the defendant's testimony at the arraignment and his testimony at the hearing of his motion to warrant the court's refusal to accept his later testimony as constituting the truth. Even were an inference of the ineffectiveness to be drawn from his failure to testify, such inference does not relieve the defendant of his burden of proof and can ". . . be treated only as corroborative of other legally sufficient evidence." *Rudy, supra,* at page 47. The judge who heard the motion ruled that defendant's evidence (testimony) was unreliable and insufficient to warrant the withdrawal of the plea.

Despite the light sentence received by the defendant, he also invokes the third situation set forth in the "manifest injustice" test and claims that his plea was

involuntary and was entered without knowledge of the charges or that the sentence actually imposed could be imposed.

The defendant who had previously been convicted of similar crimes repeatedly informed the court that he understood the charges.

The defendant was, in effect, sentenced not to exceed eight years' imprisonment. He had previously received a fifteen-year stayed sentence for burglaries. The magistrate informed him of the seriousness of the offenses. His counsel informed him that he would be imprisoned upon conviction; and the defendant, on his motion, testified that he understood the sentence that could be imposed but did not understand the difference between "concurrent" and "consecutive."

We think the failure to understand that difference is immaterial since the defendant's sentences were made concurrent.

The record is clear that the defendant, when he entered his pleas, had knowledge of the charges and knew that the sentences actually imposed could be imposed.

The defendant's final argument is based upon the United States Supreme Court's recent decision in *Boykin v. Alabama* (1969), 395 U. S. 238, 89 Sup. Ct. 1709, 23 L. Ed. 2d 274. The *Boykin* decision makes Rule 11 of the Federal Rules of Criminal Procedure,[2] as interpreted by *McCarthy v. United States* (1969), 394 U. S. 459, 89 Sup. Ct. 1166, 22 L. Ed. 2d 418, applicable in state courts.

In *McCarthy* the court held that Rule 11 is not complied with unless the judge personally questions the defendant and exposes the defendant's state of mind on the record. The record of the judge's interrogation must reveal that the plea was voluntary and that the defendant understood both the charge and its consequences.

[2] 18 USCA, p. 557.

". . . Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *McCarthy v. United States, supra,* at page 466.

Therefore, the record must also indicate "that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty." [3] The requirements of Rule 11 are not met if the judge assumes that a plea was entered voluntarily and understandingly.

This court's decision in *State v. Strickland* [4] (1965), 27 Wis. 2d 623, 135 N. W. 2d 295, is now in conflict with the *McCarthy Case,* since *Boykin v. Alabama, supra,* holds that the procedures of Rule 11 are required in state courts as a matter of federal constitutional law. *Strickland* had held that, where a defendant is represented by counsel at arraignment, a trial court is not required to inquire whether a plea was intelligently and understandingly entered. Trial courts were thus allowed

". . . the right to assume in such a situation that counsel has fulfilled his duty of proper representation by fully explaining to the accused the nature of the offense charged, the range of penalties, and possible defenses thereto, and satisfying himself that the accused understands such explanations, before permitting the accused to authorize the entry of a plea of guilty. . . ." [5]

[3] Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules, 18 USCA, p. 558.

[4] *State v. Koerner* (1966), 32 Wis. 2d 60, 145 N. W. 2d 157; *Vieau v. State* (1968), 39 Wis. 2d 162, 158 N. W. 2d 367; and *State v. Lingford,* ante, p. 615, 169 N. W. 2d 617, which have relied upon *Strickland* are also in conflict with *McCarthy.*

[5] *State v. Strickland, supra,* at page 631.

Clearly, under *Boykin v. Alabama, supra,* Wisconsin courts can no longer indulge in the presumption stated in *Strickland, supra.*

In *State ex rel. Burnett v. Burke* (1964), 22 Wis. 2d 486, 494, 126 N. W. 2d 91, this court suggested that it was feasible for the trial court to do the following and make a record thereof:

"1.  To determine the extent of the defendant's education and general comprehension.

"2.  To establish the accused's understanding of the nature of the crime with which he is charged and the range of punishments which it carries.

"3.  To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty.

"4.  To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused.

"5.  To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him."

We are now of the opinion that the above precautionary standards must be implemented by the addition of a sixth standard as required by Federal Rule 11 and *McCarthy, supra.* The new standard provides that the trial judge should personally determine " 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' " [6]

We are of the further opinion that the above procedure should now be made mandatory for the following reasons: The first and fourth standards are preliminary and elementary in nature; and the second and third standards have been made applicable to the states by the rulings in *McCarthy* and *Boykin.* Since *Burnett,* standard five was made mandatory by sec. 957.26 (1), Stats.

---

[6] Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules, 18 USCA, p. 558.

The additional standard referred to as No. 6 is mandatory under *McCarthy*.

The record in the instant case reveals a failure to conform to the procedures of Rule 11 as interpreted by *McCarthy*. It does not indicate that the conduct which the defendant admitted constituted the offenses charged in the information.

Despite this deficiency, the order of the trial court must be affirmed. This is because prior to *Boykin* the United States Supreme Court in *Halliday v. United States* (1969), 394 U. S. 831, 89 Sup. Ct. 1498, 23 L. Ed. 2d 16, rehearing denied, 395 U. S. 971, 89 Sup. Ct. 2106, 23 L. Ed. 2d 761, held that *McCarthy* should be applied prospectively only. Since *Boykin* merely makes *McCarthy* applicable to the states, it follows *Boykin* should also be applied prospectively by state courts.

*By the Court.*—Order affirmed.