STATE of Wisconsin, Plaintiff-Respondent,

v.

Gerald BARTELT, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81-2228. Argued March 2, 1983.—Decided June 1, 1983.*

(Also reported in 334 N.W.2d 91.)

For the petitioner there were briefs by *Ben Kempinen,* supervising attorney, and *Legal Assistance to Institutionalized Persons Program,* Madison, and oral argument by *Mr. Kempinen.*

For plaintiff-respondent the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with

whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J. This is a review of an unpublished decision of the court of appeals dated June 11, 1982, which affirmed an October 28, 1981, order of the circuit court for Racine county, JON B. SKOW, Circuit Judge, denying Bartelt's motion for postconviction relief under sec. 974.06, Stats. We reverse, and the cause is remanded to the trial court with directions that Bartelt be permitted to withdraw his plea of guilty.

Although several issues have been presented on appeal and on this review, we conclude that the question of whether the original plea of guilty was constitutionally acceptable is dispositive of all other ancillary questions because we conclude that the plea of guilty was involuntary as a matter of law and must be set aside.

The record shows that the defendant was charged with a violation of sec. 943.38(2), Stats., uttering a forged instrument, a $50 check. Initial appearance was made before a court commissioner on October 20, 1975. Bartelt was not represented by counsel. At the initial appearance, the district attorney told Bartelt that the maximum penalty for forgery was a fine of $5,000, a term of imprisonment of not more than ten years, or both. Sec. 970.02(1) requires that, at the initial appearance, the complaint show the possible penalties for any offense charged, and it also requires that the "judge" inform the defendant of the possible penalties if a felony is charged.

On November 24, 1975, Bartelt appeared before the then county judge of Racine county, Gilbert N. Geraghty. He was represented by Attorney John Miller, an assistant public defender, whom the defendant had not met until minutes before the guilty plea was entered. In that brief meeting, Miller told Bartelt that he had been discussing

his case with the state and that, if he were to plead guilty, he would be placed on probation if he made restitution on the forged check. During this exchange just prior to arraignment, there was no advice given to Bartelt about the rights that he would waive by his plea of guilty, the penalty consequences that might follow the plea, nor any discussion of any defenses which might be posed at trial.

The arraignment commenced at 9:11 a.m. and ended with sentencing six minutes later. During that brief hearing, without any pre-consultation with his client, Attorney Miller told the court that Bartelt waived the preliminary hearing and the reading of the information. He also told the court that Bartelt was prepared to enter a plea of guilty.

The principal terms of the plea agreement were stated to the court by the prosecutor: That the defendant would waive the preliminary hearing and agree that the matter remain in the court for further proceeding, that the state would file an information on the offense charged, and that the defendant had agreed to enter a plea of guilty. The prosecutor said that, upon a plea of guilty, he would recommend a term of probation, with the condition that restitution be made on the single check which was the subject of the charge and also in respect to six additional checks in the sum of $175 which were to be read into the proceedings.[1]

The judge then personally addressed Bartelt and asked whether he understood his right to a preliminary hearing. Upon Bartelt's answering in the affirmative, the judge then asked Bartelt whether he wished to waive that right. Upon again receiving an affirmative answer, Bartelt was bound over to the court for further proceedings.

[1] The total of the checks on which restitution was to be made as finally determined by the court was $375.

The court, Judge Geraghty again presiding, then proceeded to the arraignment and asked Attorney Miller whether he waived the reading of the information. Miller stated he did. Bartelt was not asked whether he waived the reading of the information, and there was nothing in the record to show whether he had ever seen it.

The court then disposed of the guilty plea in a colloquy which was reproduced in about one and one-half pages of transcript. The court asked whether Bartelt understood the charges set forth in the information; Bartelt said, "Yes." In response to the court's question, Bartelt stated he wished to plead guilty. The court asked whether Bartelt understood he had the right to a trial by jury, at which the state would have to prove all the facts in the information beyond a reasonable doubt and that by entering a plea of guilty Bartelt waived the right to require such proof. Bartelt responded, "Yes." The court stated that, if the case went to trial, Bartelt could call witnesses and could testify in his own behalf and that, by entering a guilty plea, Bartelt waived those rights. Bartelt responded, "Yes."

The prosecutor then asked whether the defendant would stipulate that "a factual basis can be found in the facts alleged in the complaint and information." Attorney Miller responded, "So stipulated." The court, then addressing Bartelt directly, stated, "You have discussed this matter with your attorney?" The defendant responded, "Yes, I have." The court's final question was, "And now freely and voluntarily enter a plea of guilty to the charge?" Bartelt answered, "Yes."

Thereupon, the trial judge found him guilty, withheld sentence, and placed the defendant on probation for one year on the condition that full restitution be made on the check involved and on any other outstanding checks. Bartelt was informed by the judge at the close of the hearing that, "If you don't comply with the conditions of proba-

tion, you can be brought back into this court for sentencing."

Subsequently the defendant's probation was extended, and that probation was later revoked. The extension of the probation period is challenged, but because we find the underlying plea of guilty was defective and we set aside the conviction, we do not explore the defendant's challenge to the extension of probation. Eventually, because of additional probation violations, Bartelt appeared before Judge Skow, circuit judge of Racine county, for sentencing on the 1975 forgery charge. On December 27, 1979, Judge Skow sentenced Bartelt to a ten-year term of imprisonment but stayed the imposition of the sentence and again placed Bartelt on probation. The imposition of this second term of probation on the same charge is also challenged; but again, because we look directly to the underlying guilty plea, we do not consider the propriety of the judge's placing Bartelt on probation the second time for the same offense. Eventually this second probation was revoked, and the defendant is now serving a ten-year term at the Wisconsin State Prison at Waupun.

The appeal in this case is from the denial of Bartelt's motion for postconviction relief pursuant to sec. 974.06, Stats. The motion was brought to attack the underlying guilty plea on the claim that the plea of guilty entered on November 24, 1975, was involuntary and unknowing and in violation of the defendant's right to due process. The motion was founded on the allegation that the trial court, at the time of taking the plea, failed to advise the defendant of the penalty which could be imposed and that his attorney did not inform him of the maximum penalty. In addition, it was claimed that the trial court failed to tell Bartelt that his guilty plea waived the fifth and sixth amendment rights to remain silent and to confront

his accusers. All of these alleged deficiencies in the taking of the guilty plea were stated as reasons to withdraw the plea on the ground that a finding of guilty under such circumstances constituted a manifest injustice. *See, State v. Reppin,* 35 Wis. 2d 377, 151 N.W.2d 9 (1967). The motion pursuant to sec. 974.06, Stats., also addressed alleged error in the extension of the period of probation and the subsequent reimposition of a term of probation. As stated above, we do not concern ourselves with those arguments on this review.

The hearing on the postconviction motion verified the fact that Bartelt met his attorney only moments before he entered the plea of guilty. Bartelt said that all Attorney Miller told him was that, if Bartelt pleaded guilty, he would get probation. Bartelt testified that, the way he understood the matter, everything had already been worked out, so Miller did not discuss any other options with him.

On cross-examination Bartelt was shown the record, which recited that, at the time of the initial appearance before a court commissioner, the district attorney told Bartelt that he was charged with forgery, which was punishable by a fine of not more than $5,000 or imprisonment of not more than ten years, or both. Bartelt, who was not represented by counsel at the time of the initial appearance, stated he did not recall being advised of the maximum penalty at the initial hearing and that, at the time of the sentencing hearing, he did not know what the penalty could be. He also stated that, prior to the entry of the plea, he was unaware of his right to cross-examine the state's witnesses. Thus, the hearing for postconviction relief pursuant to sec. 974.06, Stats., revealed that the defendant was not informed that his guilty plea would waive the right against self-incrimination and the right to cross-examine state witnesses; nor was he told

at the time of the guilty plea what the maximum penalty could be.[2]

We have held that, for a plea of guilty to be constitutionally acceptable, it is required that a defendant know-

[2] Although the record demonstrates that the trial court did not make any inquiry into the defendant's understanding of the range of punishments to which the charge subjected him, the record did demonstrate that, several weeks earlier, the district attorney at the initial appearance informed Bartelt of the maximum range of punishment. In *Jones v. State*, 59 Wis. 2d 184, 207 N.W.2d 890 (1973), this court relied upon another portion of the record to demonstrate that the police had informed a defendant of his right not to incriminate himself and that he had waived that privilege. In *Jones*, however, the defendant did not deny that he had not been informed of his right against self-incrimination and, more importantly, he did not claim he was unaware of his rights at the time of the plea. In the instant case, Bartelt specifically asserted that, at the time he pleaded guilty, he was unaware of the maximum penalty.

We should also point out that the recent case of *United States v. Gray*, 611 Fed. 2d 194, 201 (7th Cir. 1979), cert. den. 446 U.S. 911 (1980), is of limited relevance. *Gray* is far different than the case before us. In *Gray*, the information in respect to the length of sentence was supplied at the arraignment. The district judge was present, and he directed the prosecutor to explain the nature of the charges and to state the maximum penalty to the defendant. This was done in the very presence of the judge; and, accordingly, in *Gray* the judge had personal knowledge that the defendant was correctly informed. Accordingly, in *Gray*, the judge who took the plea and sentenced the defendant knew that the defendant had been fully informed of the possible penalty and knew on a first-hand basis that the defendant understood the maximum sentence that could be imposed. By making a distinction between *Gray* and the instant case, we do not approve or disapprove the determination of *Gray* even in the circumstances therein. Because the fact that a defendant was told sometime earlier of his rights is not necessarily determinative of whether he understood those rights at a later time. We simply do not pass on the correctness of *Gray*, but we point out that the facts therein make it non-applicable to the case

ingly, with full understanding of the consequences, waive various specifically stated constitutional rights, including the right against self-incrimination and the right to confront witnesses and to cross-examine them. Also, it is required that a defendant about to plead guilty know the potential punishment upon conviction. Sec. 971.08, Stats., provides:

"(1) Before the court accepts a plea of guilty or no contest, it shall:
"(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; and
"(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged."

Despite these apparent deficiencies at the guilty plea hearing, Judge Skow, following the hearing for postconviction relief, denied the motion to withdraw the plea. He said, "[T]here may have been a technical deficiency here or there," and stated that the sentencing judge had addressed the defendant and advised him of his rights, "in a somewhat summary fashion and maybe not in scientific precision."

Despite this recognition of the cursory handling of the guilty plea, Judge Skow, who handled the postconviction hearing, made no findings of fact but merely reached the conclusion that Judge Geraghty at the guilty plea hearing "made the finding that the plea was knowingly and intelligently, voluntarily offered, and upon that plea he found the defendant guilty." Judge Skow made no attempt to weigh the sufficiency of the proceedings on the basis of facts elicited at the sec. 974.06, Stats., hearing, but merely concluded that, at the prior guilty plea hearing, the judge addressed the defendant "with respect to

before us where the trial court had nothing to do with the initial appearance.

the various due process trappings." The only one of these "trappings" referred to by Judge Skow with particularity was whether or not the defendant understood the charge.

Upon the denial of Bartelt's motion for relief pursuant to sec. 974.06, Stats., appeal was taken to the court of appeals. That court correctly concluded that the trial court, upon taking the plea of guilty, failed to conform to statutory and constitutional guidelines. It specifically found, on the basis of the uncontested facts which we have recited above, that:

"At no time did the court advise Bartelt of the maximum penalty for the offense or that such a term could be invoked if probation were revoked. The court also did not advise Bartelt that his plea waived his right against self-incrimination and waived his right to present a defense."

Despite the deficiencies in the guilty plea record, the court of appeals affirmed the circuit court's order denying postconviction relief.

The court of appeals pointed out that *Boykin v. Alabama,* 395 U.S. 238 (1969), specifically provides that, unless the record affirmatively demonstrates a knowing waiver of the rights of self-incrimination and confrontation, the upshot is a denial of due process. The court of appeals also cited sec. 971.08(1)(a), Stats., which requires that the defendant personally be addressed and that it be determined by the court that the defendant understands the potential punishment if convicted.

We additionally point out that there were other deficiencies in the taking of the guilty plea which are apparent from the record and are uncontroverted and must be accepted as a verity. There was no determination of the extent of the defendant's education or general comprehension; nor was there any determination whether any promises or threats were made to Bartelt in connection with his proposed plea of guilty. We point out that

there was, of course, a promise implicit in the whole proceedings, and that was that the defendant would be placed on probation were he to plead guilty. At no time was the defendant alerted to the fact that, although the prosecution was bound to carry out its recommendation, such promise was not binding on the court. Moreover, the record demonstrates that Bartelt's lawyer never alerted him to the possibility that there might be possible defenses to the charge or that, even though the defendant were guilty, there might be mitigating circumstances.

These last cited considerations are all compelled by *Ernst v. State*, 43 Wis. 2d 661, 664, 170 N.W.2d 713 (1969). *Ernst* also recognized that *Boykin, supra,* is mandatorily applicable to state courts and sets a minimum due process standard which must be followed in Wisconsin.

Despite the court of appeals' clear understanding that the guilty plea did not conform to the standards of *Boykin, Ernst,* and subsequent Wisconsin cases, the court of appeals, relying upon *State v. Rock,* 92 Wis. 2d 554, 285 N.W.2d 739 (1979), affirmed the trial court order. In *State v. Rock,* at page 559, this court employed the following language:

"To withdraw a plea as a matter of right on constitutional grounds, the defendant must show: (1) that a violation of a constitutional right has occurred; (2) that this violation caused him to enter a plea of guilty or of no contest; and (3) that at the time of his plea, he was unaware of the potential constitutional challenges to the case against him because of the violation. *Hatcher v. State* [83 Wis. 2d 559, 266 N.W.2d 320 (1978)], *supra* at 565; *State v. Carlson,* 48 Wis. 2d 222, 230, 179 N.W.2d 851 (1970)."

We conclude that the court of appeals inappropriately and out of context applied the test which appears in *Rock.* The court of appeals in interpreting the quoted language said:

"Application of the rule expressed in *Rock* to the present fact situation indicates that Bartelt has not met his burden. He failed to offer proof that the violation caused him to enter a guilty plea. Specifically, Bartelt did not offer sufficient proof to establish that he pleaded guilty because he was unaware of the penalty involved and unaware of the rights he was waiving. Absent such proof, Bartelt has no absolute right to withdraw his guilty plea."

It is evident that the court of appeals determined from the uncontested record that it was established by clear and convincing evidence that Bartelt was unaware of the penalty involved and unaware of the significant constitutional rights he was waiving. It found that his proof was insufficient only because he failed to show that these violations *caused* him to enter a plea of guilty. This is an inappropriate test and is the result of a misinterpretation of this court's opinion. The court of appeals leaps to the conclusion that *Rock* permits a plea to stand although the plea was taken in violation of the standards of due process set forth in *Boykin* and in violation of the standards of *Ernst*. This interpretation, which is seized upon by the state in order to bolster up this conviction and order, makes no sense when considering the adequacy of the guilty plea itself, which must, as a matter of constitutional law, be entered into voluntarily and with knowledge and understanding. We conclude, therefore, that it was error for the court of appeals to apply a test, developed as an exception to the guilty-plea-waiver rule, to a case where the plea itself was so defective that it could not be considered a valid waiver of anything.

An examination of *Rock* and the cases which it specifically cites, *Hatcher* and *Carlson,* demonstrates that the rule relied upon by the court of appeals and by the state is applicable to the guilty-plea-waiver rule but not

to the question of whether or not the guilty plea should be set aside because it was not taken under constitutionally antiseptic circumstances.

*Rock* shows that the three-pronged test was directed to the waiver of alleged constitutional deprivations which occurred prior to the taking of the guilty plea—prior ineffective assistance of counsel, prior failure to challenge a complaint, prior improper waiver of a preliminary hearing, and prior failure to suppress evidence. These were matters which were not relevant to the waiver of objections to constitutional deprivations at the time of taking the plea, but were relevant to deprivations that occurred at an earlier time in the proceedings.

Clearly, the portion of the test, the provisions that a "violation caused him to enter a plea of guilty," is directed to a type of constitutional violation, such as a claimed violation resulting from the denial of a motion to suppress. We have recently said, if one is aware of such a prior violation, the plea of guilty constitutes a waiver of objections to that violation. *See, State v. Riekkoff,* 112 Wis. 2d 119, 332 N.W.2d 744 (1983).

If there were any doubt of the inapplicability of the *Rock* rule relied upon by the court of appeals, resort should be had to *Hatcher v. State,* 83 Wis. 2d 559, 266 N.W.2d 320 (1978), and *State v. Carlson,* 48 Wis. 2d 222, 179 N.W.2d 851 (1970), which were cited as the basis of the rule in *Rock.* It is clear that *Carlson* was not in any way concerned with the question of improper procedure in the course of taking the guilty plea. There, the prior violation alleged was the denial of counsel after a *Miranda* request and then proceeding with the interrogation in defiance of the *Miranda* rule—clearly an instance of the applicability of the guilty-plea-waiver rule as it affects the violations which occurred prior to, and separate from, the taking of the guilty plea.

In *Hatcher v. State,* the prior right which was waived was the right to a speedy trial. Again, as in *Carlson,* the propriety of the procedures involved at the guilty plea hearing were not involved.

The opinion which may have led to some of the confusion reflected in the state's argument and in the court of appeals opinion is *Edwards v. State,* 51 Wis. 2d 231, 186 N.W.2d 193 (1971). *Edwards* utilized the three-pronged test, which has been repeated in later cases, stating:

> "To withdraw a plea as a matter of right on constitutional grounds, a defendant must show a violation of a constitutional right; that this violation caused him to plead guilty; and at the time of his plea he was unaware of the potential constitutional challenges to the case against him because of the violation of his constitutional rights." P. 234.

*Edwards* appears, in some respects, to confuse the waiver of rights which are encompassed in the guilty-plea-waiver rule and those rights and admonitions which must be made clear to a defendant at the time of a plea which are mandated by *Boykin* and *Ernst*. *Edwards* states that a plea of guilty constitutes a waiver of constitutional rights and, hence, must meet the due process standard of an intentional relinquishment or abandonment of a known right or privilege. In addition, it also provides that:

> "[A] plea may be withdrawn as a matter of right when the acceptance of the plea constituted . . . a denial of a relevant constitutional right." P. 234.

Thus, the plea proceedings themselves must be constitutionally acceptable or the plea may be withdrawn as a matter of right.

The application of the three-pronged test, clearly appropriate and applicable in respect to the guilty-plea-waiver rule, appears to have crept into *Edwards* by way of dicta, and the dicta was not appropriate because the standards related to the guilty-plea-waiver rule were inapplicable to the situation in *Edwards*. This court, on reviewing the record, concluded, "Edwards understood what constitutional rights he waived by his plea and that is sufficient." P. 235. Thus, *Edwards,* the case which apparently led to the present misunderstanding, was not decided on whether or not the denial of the due process proceeding in taking the guilty plea "caused" the plea to be entered, but rather was decided on the grounds that *Edwards* knowingly, understandingly, and voluntarily entered the plea.

*Spinella v. State,* 85 Wis. 2d 494, 271 N.W.2d 91 (1978), relied in part upon the dicta of *Edwards v. State* and, to the extent that the language of *Spinella* can be construed as validating the state's theory that the three-pronged rule is ever applicable when there is not a voluntary, knowing, and understanding plea, *Spinella* is specifically overruled. We point out, however, that the *ratio decidendi* of *Spinella* was that *Spinella* knowingly and voluntarily entered a plea and was fully aware of the consequences of pleading guilty. Thus, *Spinella* relied upon the dicta of *Edwards* in circumstances when it was not necessary to do so. *Spinella* found the plea procedures did not violate the constitutional mandates of *Boykin* and *Ernst*. An examination of the cases relied upon by the court of appeals in its decision and those urged as being precedential by the state are all based on the guilty-plea-waiver rule and have no applicability where the acceptance of the plea is itself improper.

Te recapitulate then, it is apparent that the three-pronged test, which had its origin in *Carlson, supra* and in *State v. Biastock,* 42 Wis. 2d 525, 167 N.W.2d 231

(1969), did not involve challenges to guilty plea hearing procedures but involved the waiver of antecedent constitutional violations, such as those involving the fourth or fifth amendments. The three-pronged test was meant to be an exception to the guilty-plea-waiver rule, which perforce presupposes a voluntary and intelligent guilty plea. The test is not appropriate for the instant case or cases similar to it, where the challenge is based on the validity of the plea because of lack of knowledge of consequences of the plea or because of other due process violations which are permitted to infect the plea hearing.

The test borrowed from *Carlson* does not even make sense when applied to a case such as this one. The requirement that the defendant know about the violation when he entered his plea is clearly directed to cases like *Hawkins v. State*, 26 Wis. 2d 443, 132 N.W.2d 545 (1965), where the defendant was fully aware of the potential constitutional challenge to a search when he entered his plea. The requirement has no applicability to a case such as the one now before the court.

The relevant question in a case such as the one before us is whether the defendant actually knew the rights he was waiving and the other consequences of his guilty plea, but not whether he was aware of a possible due process challenge to the inadequate admonitions offered or *procedures* used to take his plea at the time he pleaded guilty. For example, one of the questions which is mandated by the *Boykin-Ernst* series is whether the plea was coerced. It would be preposterous to say that a plea could not be withdrawn because the defendant knew, when he pleaded, that he had been threatened with harm by an officer of the state or by someone else if he did not plead guilty. The requirement that the plea could be withdrawn only if the violation caused the defendant to plead guilty was fashioned for cases such as *Hawkins*,

where the alleged constitutional violation was the source of the evidence which impelled the defendant to plead guilty. *See, State v. Riekkoff,* 112 Wis. 2d 119, 322 N.W. 2d 744 (1983).

Although we have stated that there are opinions of this court, if not carefully read in connection with the precedents upon which they rely, which could conceivably support the position of the court of appeals, there are numerous cases involving the withdrawal of guilty pleas which do not refer to the three-pronged *Edwards* test or hold that the defendant must, if he wishes to withdraw his plea, show that a constitutional infirmity in the guilty plea hearing itself caused him to plead guilty. For example, *see, State v. Schill,* 93 Wis. 2d 361, 286 N.W.2d 836 (1980) ; *State v. Lee,* 88 Wis. 2d 239, 276 N.W.2d 268 (1979) ; *State v. Besso,* 72 Wis. 2d 335, 240 N.W.2d 895 (1976) ; *State v. Jackson,* 69 Wis. 2d 266, 230 N.W.2d 832 (1975) ; *McAllister v. State,* 54 Wis. 2d 224, 194 N.W.2d 639 (1972) ; *Hanson v. State,* 52 Wis. 2d 396, 190 N.W.2d 129 (1971) ; *Jacobs v. State,* 50 Wis. 2d 355, 184 N.W.2d 110 (1971).

These cases are significant in that they are subsequent to *Carlson,* which articulated the three-pronged rule, and yet none of those cases indicate that, to establish a right to withdraw the plea, the defendant must show that a violation of due process rights at a plea hearing caused the defendant to enter the plea of guilty. Moreover, a number of these cases are subsequent to *Edwards v. State* and belie the assertion of the state that, following *Edwards,* the three-pronged test has been consistently applied to the instant situation.

What the cases as a whole demonstrate is that, if a plea is not understandingly made, it must be permitted to be withdrawn.[3] Any intimation in any of the cases

---

[3] This court on numerous occasions has made it clear that the essence of a guilty plea is that the trial court in the person of

relied upon by the state and utilized by the court of appeals in support of its opinion which add the requirement that there must be a showing that the violation of due process at the plea hearing "caused" the defendant to plead guilty is rejected. If indeed such cases exist, they are aberrations from the rule and, to the extent that there is any suggestion that the three-pronged test is applicable where the plea itself was taken in violation of constitutional requirements, they are specifically and unequivocally disavowed.

---

the judge must conduct an interrogation of the defendant and make a record of the interrogation. The questions asked by the judge must affirmatively show on the record that the plea was voluntary, that the defendant understands the charge and its consequences, and that he knowingly waives constitutional rights which must be enumerated. Nevertheless, we have, from time to time, indicated that it was the substance of the hearing that was important and that a particular format or litany of questions was not the *sine qua non* of an adequate guilty plea. We have, however, even if we found a plea proceeding minimally acceptable, never praised a judge for failing to go through the details of the guilty plea procedure which had been heretofore established by Wisconsin case law. To shortcut these procedures is to invite postconviction motions and may well lead to the upsetting of convictions where proper prodecures would have assured that the guilty were duly punished.

The procedures for taking a guilty plea in a manner that is constitutionally unassailable are set forth in detail in the special materials which are made a part of the Wisconsin Criminal Jury Instructions. They appear as SM–32. The Jury Instruction Committee has carefully undertaken an analysis of the relevant cases, both state and federal, and the guidelines set forth in SM–32 will substantially alleviate the possibility of erroneously taking a guilty plea and will insure that a defendant's rights are not impinged by the guilty plea procedure. While all portions of those special materials have not been tested in this court, it is apparent that they are a work which evinces superior scholarship and an in-depth understanding of constitutional law and criminal procedures. We strongly advise trial judges to give substantial heed to the explicit directions contained therein when accepting a plea of guilty or of no contest.

We need only to point to *Boykin* to demonstrate that the guilty plea taken in this case did not conform to the constitutional minimums. *Boykin* pointed out that it was error for a trial court to accept a guilty plea without an affirmative showing that it was intelligent and voluntary. It specifically stated that a due process violation occurred when a court, without an affirmative showing on the record, presumed a waiver of the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. Two such due process violations uncontrovertibly appear in this record. There was no affirmative showing that the defendant was apprised of his privilege against self-incrimination and his right to confront and cross-examine witnesses against him, or that he knew that those rights would be waived by a plea of guilty. The testimony was to the contrary. Bartelt testified at the hearing on the post-conviction motion that he was not apprised of those rights and was unaware of them.

It is evident then that, at the postconviction hearing, Bartelt demonstrated by clear and convincing evidence that the guilty plea did not meet the constitutional standards of voluntariness and knowledge and was obtained in violation of due process. It is therefore void.

In a somewhat peripheral argument, the state asserts that whatever the requirement may be in a direct attack on a conviction, it is constitutionally permissible where there is a collateral attack to require a convicted person to prove that the violation at the guilty plea proceedings in fact caused him to plead guilty.

This is a doctrine unknown to the Wisconsin law, and nothing in the briefs of the state demonstrate that this court has ever accepted such a contention. Moreover, the cases of the United States Supreme Court upon which the state attempts to rely give no support to this theory. The state relies upon *United States v. Timmreck*, 441 U.S. 780 (1979). The issue in that case, as stated by

its author, Justice Stevens, was "whether a conviction based on a guilty plea is subject to collateral attack whenever it can be shown that Rule 11 of the Federal Rules of Criminal Procedure was violated when the plea was accepted." P. 781.

In *Timmreck*, no constitutional error was asserted. The only violation alleged was the failure to follow the supervisory directions of the Supreme Court embodied in Federal Rule 11. The case before us involving Bartelt is one of constitutional error under sec. 974.06, Stats. *Timmreck* is thus irrelevant.

Moreover, in the quite recent case of *Henderson v. Morgan*, 426 U.S. 637 (1976), a collateral attack was made on a state conviction of second-degree murder. The issue was directed to the constitutional question of whether the plea was voluntary when the defendant was not informed that the intent to cause the death of his victim was an element of the offense. The defendant stated that the failure to inform him that intent was a necessary element of second degree murder caused him to plead guilty. The court said that whether or not that fact *caused* him to plead guilty was irrelevant. It assumed that, irrespective of the failure to supply such information to the defendant, he nevertheless would have pleaded guilty. But the court went on to say that, even if the lack of information did not cause the plea, "Nevertheless, such a plea cannot support a judgment of guilt unless it was voluntary in a constitutional sense." Pp. 644–45. Hence, under *Henderson v. Morgan*, even if lack of voluntariness in the constitutional sense (the failure to be informed about the elements of the crime) was not the cause of the plea—the defendant would have pleaded guilty anyway—the withdrawal was a matter of right, because the plea itself was not constitutionally taken.

*Henderson v. Morgan* demonstrates without doubt that, upon a collateral challenge to a guilty plea, it is unneces-

sary for a Wisconsin defendant to show that the violation of the voluntariness requirements of *Boykin* and *Ernst* caused him to plead guilty. It is enough to show that they were violated.

The court of appeals erred in holding that Bartelt had no right to withdraw his guilty plea because he did not establish that the constitutional violations which occurred during the very course of taking the plea caused him to plead guilty.

Accordingly, we reverse the court of appeals and remand the cause to the circuit court with directions to vacate the plea of guilty and for further proceedings.

*By the Court.*—Decision reversed, and cause remanded to the circuit court for further proceedings consistent with this opinion.