STATE of Wisconsin, Plaintiff-Respondent,

v.

Phillip CECCHINI, Defendant-Appellant.

Supreme Court

*No. 84–615–CR. Argued January 31, 1985.—Decided June 10, 1985.*

(Also reported in 368 N.W.2d 830.)

For the defendant-appellant there were briefs by *Arthur B. Nathan* and *Nathan Law Office, S.C.,* Racine, and oral argument by *Mr. Nathan.*

For the plaintiff-respondent the cause was argued by *John J. Glinski,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

WILLIAM A. BABLITCH, J. Phillip Lee Cecchini (Cecchini) appeals an order of the circuit court denying his motion to withdraw his plea of no contest. We hold that prior to accepting a plea of guilty or no contest, the trial court must ascertain that the defendant understands the nature of the charge, and that this must be done on the record at the plea hearing. Because the trial court failed to do so in this case, the plea was involuntary and unknowing and in violation of the defendant's right to due process. Accordingly, we reverse the trial court's denial of postconviction relief and remand to the trial court with directions that Cecchini be permitted to withdraw his plea of no contest.

The record shows that on October 10, 1983, Cecchini was charged with two traffic offenses: fleeing an officer and operating without a motorcycle endorsement. He was also charged with the felony of endangering safety by conduct regardless of life, contrary to sec. 941.30, Stats., set forth in full below.[1] This charge was based on the presence of a passenger on the back seat of the motorcycle during a high-speed chase.

Following a preliminary hearing, Cecchini was bound over for trial on the endangering safety charge. Thereafter, the State of Wisconsin (State) agreed to drop charges for the two traffic offenses in exchange for Cecchini's plea of no contest to the felony charge of endangering safety. A brief colloquy, which is quoted here in its entirety, took place at the plea hearing.

"THE COURT: Mr. Cecchini, if you enter a plea of guilty or no contest to this charge, you're giving up your right to have the State prove that you're guilty beyond a reasonable doubt and have a jury determine whether or not you're innocent or guilty.

"You have an opportunity to challenge the evidence against you which includes bringing motions to suppress it and asking questions of witnesses that would testify against you to test their truthfulness. You give up that opportunity if you're going to admit your guilt.

"You, also, forfeit your right to present your own evidence, your own testimony and witnesses at trial. And you forfeit your right to remain silent. You have a right not to be convicted by your own words. Do you understand all that?

"THE DEFENDANT: Yes.

"THE COURT: Okay, do you have any questions of me or Miss Vishny at this time?

"THE DEFENDANT: No, I don't.

"THE COURT: Have you had a chance to talk this over with your lawyer?

---

[1] "941.30 Endangering safety by conduct regardless of life. Whoever endangers another's safety by conduct imminently dangerous to another and evincing a depraved mind, regardless of human life, is guilty of a Class D felony."

"THE DEFENDANT: Yes, I have.
"THE COURT: How far have you gone in school?
"THE DEFENDANT: Twelfth grade.
"THE COURT: Do you feel pressured in any way into entering a plea of guilty or no contest to this charge?
"THE DEFENDANT: No, I don't.
"THE COURT: Okay, the maximum penalty is a $10,000 fine or five years in prison or both. I could give you up to the maximum amount of time and fine. Do you understand that?
"THE DEFENDANT: Yes, I do.
"THE COURT: Okay. Now, they allege that on October 10, 1983 you endangered another's safety by conduct imminently dangerous to another and evincing a depraved mind regardless of human life and that you endangered the safety of Brian Czuper. And how do you plead to that charge?
"THE DEFENDANT: No contest.
"THE COURT: I will accept the plea as knowingly, intelligently and voluntarily made.
" . . . .
"THE COURT: Okay, based upon that stipulation and a reading of that document, the Court will—or the transcript of the preliminary hearing, the Court will find there is a sufficient factual basis for a finding of guilt. The Court will find you guilty."

This perfunctory colloquy represents the entire discussion the trial court had with Cecchini before accepting his plea of no contest. As is evident from the foregoing, there is nothing in the plea hearing transcript that indicates that Cecchini was either informed of or understood the nature of the charge. The record is completely devoid of any description of the charge, or any advisement as to the essential elements of the offense.

Following a presentence investigation, Cecchini was sentenced to three months in jail with Huber privileges. His driver's license was revoked for a one year period.

The defendant subsequently moved the trial court for postconviction relief under sec. 974.06, Stats. The mo-

tion was brought to withdraw the plea of no contest on the claim that Cecchini did not understand the elements of the crime at the time the plea was entered and accepted. Cecchini argued, first, that the plea was improperly accepted because the trial court had not established, on the record at the time the plea was entered, that he understood the elements of the offense with which he was charged. Second, he argued that the facts did not support the guilty plea to the charge of endangering safety.

The trial court rejected both of these arguments and the defendant subsequently appealed to the court of appeals. The court of appeals certified this case to this court for disposition of the first issue only.[2]

The issue certified is whether the trial court abused its discretion in denying Cecchini's postconviction motion to withdraw his no contest plea because of the failure of the trial court to ascertain on the record at the plea hearing that Cecchini understood the nature of the charge prior to accepting his plea.

This court has held that in order for a guilty plea to meet constitutional, due process requirements, the defendant must knowingly and voluntarily, with full understanding of the consequences, waive his or her specifically stated constitutional rights. *State v. Bartelt,* 112 Wis. 2d 467, 474–75, 478, 334 N.W.2d 91 (1983). Included among these rights are the right against self-incrimination, the right to confront witnesses and the right to cross-examine them. *Id.* at 475; *Boykin v. Alabama,* 395 U.S. 238, 243 (1969). The defendant must

---

[2] Consequently, we do not address the defendant's second argument that there was an insufficient factual basis in the record to support the guilty plea. We note that the question of whether the guilty plea was constitutionally acceptable is dispositive of this case.

also be informed about the potential punishment he or she faces upon conviction. *Bartelt* at 475.

This court, in accordance with the mandate of *McCarthy v. United States*, 394 U.S. 459 (1969), and *Boykin*, has also held that in accepting a guilty plea, the trial court must personally establish on the record that the defendant's plea was voluntarily and knowingly made. *McAllister v. State*, 54 Wis. 2d 224, 230, 194 N.W.2d 639 (1972); *Hatcher v. State*, 83 Wis. 2d 559, 563, 266 N.W.2d 320 (1978) (*citing Ernst v. State*, 43 Wis. 2d 661, 170 N.W.2d 713 (1969)). The *Ernst* court held that trial courts are required to do the following prior to accepting a plea of guilty or no contest:

" '1. To determine the extent of the defendant's education and general comprehension.

" '2. *To establish the accused's understanding of the nature of the crime with which he is charged* and the range of punishments which it carries.

" '3. To ascertain whether any promises or threats have been made to him in connection with his appearance, his refusal of counsel, and his proposed plea of guilty.

" '4. To alert the accused to the possibility that a lawyer may discover defenses or mitigating circumstances which would not be apparent to a layman such as the accused.

" '5. To make sure that the defendant understands that if a pauper, counsel will be provided at no expense to him.' " *Id.* at 674 (*quoting State ex rel. Burnett v. Burke*, 22 Wis. 2d 486, 494, 126 N.W.2d 91 (1964)). (Emphasis added.)

*Ernst* adopted a sixth standard as mandated by Federal Rule of Criminal Procedure 11 and *McCarthy* which required trial courts to personally determine that a factual basis existed to support the plea. *Ernst* at 674. Portions of the *Ernst* standards have been codified in sec. 971.08, Stats., which provides in part:

"(1) Before the court accepts a plea of guilty or no contest, it shall:

"(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; and

"(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged."

Section 971.08, was modeled after F.R. Cr. P. 11. *See* Sec. 971.08, Comment 1969.

A guilty plea may be withdrawn as a matter of right when the plea fails to meet the constitutional due process standard of a knowing and voluntary relinquishment of specifically stated constitutional rights. *Bartelt* at 474–75, 480. "Thus, the plea proceedings themselves must be constitutionally acceptable or the plea may be withdrawn as a matter of right." *Id.* at 480. The trial court's determination that a guilty plea may not be withdrawn as a matter of right because it was taken under constitutionally acceptable circumstances is a question of law which may be reviewed without deference to the circuit court. *State v. Denter*, 121 Wis. 2d 118, 122, 357 N.W.2d 555 (1984).

In the instant case, the trial court denied Cecchini's postconviction motion to withdraw his plea of no contest despite its failure to have elicited any statement from the defendant regarding his understanding of the nature of the charge at the plea hearing. The court of appeals certified the issue in this case because of perceived uncertainties as to which portions of the record it was permitted to consider in determining whether the trial court properly denied the defendant's motion to withdraw his plea. In other words, the court of appeals was unsure as to how much of the record a reviewing court was permitted to examine to determine whether a defendant possessed the requisite understanding of the

nature of the charge. We conclude that this question was definitively answered in *McAllister*.

At issue in *McAllister* was whether the trial court's failure to sufficiently ascertain that the defendant understood the nature of the charge against him made the defendant's plea unknowing and unintelligent. *Id.* at 228. This court found that "[a]t the taking of the plea the court did not in any way question defendant about his understanding of the charge or ascertain that the defendant understood the elements of the crime. . . ." *Id.* at 229. The State argued that the defendant's understanding of the charge did not need to appear on the record. *Id.* This court rejected this argument in unequivocal terms stating:

> "The court has a duty to fulfill the *Ernst* requirements *on the record.* Defendant denies he understood the charges against him. The state attempts to circumvent the *Ernst* requirement by arguing that defendant really did understand the charge, but again that is not the issue. *The issue here is what duty the trial court had when accepting the plea of guilty.* . . .
> "*The requirement that defendant understand the charge against him is most basic to a knowing plea.* Unlike the requirements that the court ascertain that defendant has not been coerced and has sufficient education to enter a plea, *defendant's understanding of the charge cannot be demonstrated through other testimony.* Certainly such knowledge is not shown here. The record does not disclose that defendant understood the charge or that his acts violated the statute. *Such knowledge cannot be drawn from his other statements to the court.* The record is thus fatally defective and reversal is required." *Id.* at 230. (Emphasis added.)

Our holding in *McAllister* was based on the United States Supreme Court's decision in *McCarthy.* In *McCarthy,* the petitioner had been indicted for attempted evasion of federal tax payments. Petitioner's counsel moved to withdraw the petitioner's plea of not guilty

to one of the counts and to enter a plea of guilty instead. In response to the district judge's inquiry, the petitioner stated that he desired to plead guilty, and that he understood that in pleading guilty he waived his right to a jury trial and was subject to the specified maximum penalty. The petitioner also stated that his plea was not the product of threats or promises. *McCarthy* at 461. The judge did not, however, inquire at any point in the hearing as to whether the petitioner understood the nature of the charge against him.

The Court held that the district court's failure to fully comply with Rule 11 of the Federal Rules of Criminal Procedure entitled the defendant to withdraw his guilty plea. The Court rejected the government's argument that since the petitioner stated his desire to plead guilty, and since he was informed of the consequences of his plea, the district court "could properly *assume* that petitioner was entering that plea with a complete understanding of the charge against him." *McCarthy* at 464–65. (Emphasis in original.) The Court expressly found that this argument completely ignored two purposes of Rule 11 stating:

"First, although the procedure embodied in Rule 11 has not been held to be constitutionally mandated, it is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a *complete record at the time the plea is entered of the factors relevant to this voluntariness determination.* Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous postconviction attacks on the constitutional validity of guilty pleas." *Id.* at 465. (Footnotes omitted.) (Emphasis added.)

The *McCarthy* Court explained that these two purposes have their genesis in the nature of the guilty plea

itself. *Id.* at 466. Because a defendant who enters such a plea waives several constitutional rights, the plea must be voluntary and knowing in order to meet due process requirements. *Id.* The Court concluded that McCarthy's guilty plea had to be set aside because the record at the plea hearing did not disclose that he understood the nature of the charge. The Court stated that "because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." *Id.* (Footnote omitted.) *See also* Note, *Rule 11 and Collateral Attack on Guilty Pleas,* 86 Yale L.J. 1395, 1400 (1977).

The Court, in requiring strict adherence to the requirements of Rule 11, stated: "[t]here is no adequate substitute for demonstrating *in the record at the time the plea is entered* the defendant's understanding of the nature of the charge against him." *Id.* at 470. (Emphasis in original.) "[S]ince the elements of the offense were not explained to petitioner, and since the specific acts of tax evasion do not appear of record . . ." *Id.* at 471, the defendant was deprived of Rule 11's procedural safeguard, which was designed to facilitate a more accurate determination of the voluntariness of his plea.

While the *McCarthy* Court explicitly indicated that its decision was based solely upon its construction of Rule 11 and was made pursuant to its supervisory power over lower courts, this court found that the *Boykin* Court made the procedures of Rule 11 applicable in state courts as a matter of constitutional law. *Ernst* at 673–74 (*citing Boykin* at 243–44). *See* Erickson, *The Finality of a Guilty Plea,* 48 Notre Dame Law. 835, 836 (1973). The *Ernst* court set forth the requisite standards for accepting a plea of guilty or no contest based on its conclusion that Rule 11 and *McCarthy* were

constitutionally mandated by *Boykin*. *Ernst* at 673–74. This court has restated the *Ernst* requirements repeatedly and,

> "on numerous occasions has made it clear that the essence of a guilty plea is that the trial court in the person of the judge must conduct an interrogation of the defendant and make a record of the interrogation. The questions asked by the judge must affirmatively show *on the record* that the plea was voluntary, that the defendant understands the charge and its consequences, and that he knowingly waives constitutional rights which must be enumerated." *Bartelt* at 483–84 n. 3. (Emphasis added.)

A defendant's understanding of the nature of the charge *at the time the plea is entered* is crucial in ensuring both the voluntariness and the intelligence of the plea. Whether a defendant possessed knowledge of the nature of the charge at sometime prior to the plea hearing "is not necessarily determinative of whether he understood . . . at a later time." *Bartelt* at 474, n. 2. Similarly, whether a defendant possessed knowledge of the nature of the charge at some point after the plea was accepted is equally irrelevant as to the defendant's understanding of the nature of the charge at the time the plea was entered.

We thus conclude that in reviewing the constitutional validity of a guilty plea, the reviewing court may only look to the plea hearing transcript itself to determine whether the defendant possessed a constitutionally sufficient understanding of the nature of the charge. The court may not search the entire record for evidence of a knowing and voluntary waiver.

The court of appeals correctly noted in its certification memo that our later cases of *Spinella v. State*, 85 Wis. 2d 494, 271 N.E.2d 91 (1978) and *White v. State*, 85 Wis. 2d 485, 271 N.W.2d 97 (1978), made it some-

what unclear whether reviewing courts may go outside the record of the plea hearing and examine the entire record to determine whether the defendant possessed the requisite understanding of the nature of the charge.

In *Spinella*, this court, while restating the *McAllister* rule, reviewed the entire record to demonstrate that the defendant possessed the requisite understanding of the nature of the charge at the time the court accepted his guilty plea. To the extent that this decision can be construed as validating the State's theory that a reviewing court may properly examine the entire record to determine that a plea was knowingly and voluntarily entered, *Spinella* is expressly overruled. As we have stated, the *McAllister* and *McCarthy* courts' concerns with the voluntariness and intelligence of a defendant's guilty plea require documentation of the defendant's state of comprehension at the time the plea is made.

*White*, however, is clearly distinguishable from the case before us. The issue in *White* was whether a factual basis had to be established at the plea hearing or whether it could be established through testimony prior to the plea hearing. We held that a factual basis could be established through facts adduced prior to the plea hearing. Thus, our conclusion in *White* that a reviewing court may properly look to the transcript of other proceedings in a case to determine whether a sufficient factual basis for accepting the plea has been presented was clearly not intended to provide reviewing courts with the authority to examine whole records in order to determine the defendant's understanding of the nature of the charge.

In conclusion, *McAllister* controls: a reviewing court is limited to an examination of the record of the plea hearing in determining whether the trial court properly ascertained the defendant's understanding of the nature of the charge. In examining the transcript from the

plea hearing in the instant case, we find that the record, like the record in *McAllister* and *McCarthy,* is completely silent as to Cecchini's understanding of the nature of the charge against him. There is nothing in the transcript of the plea hearing which indicates that the defendant was either informed of or understood the nature of the charges against him. The record is entirely devoid of any description of the crime charged or any advisement as to the essential elements of the offense.

As the Seventh Circuit stated in holding that a Wisconsin trial court had failed to fulfill its duty to establish on the record that the defendant understood the elements of the crime charged, "[i]t is elementary that a guilty plea, as an admission of all elements of the crime charged, cannot be truly voluntary unless the defendant possesses an understanding of 'the law in relation to the facts.'" *Nash v. Israel,* 707 F.2d 298, 302 (7th Cir. 1983) (*quoting McCarthy* at 466). *See also Henderson v. Morgan,* 426 U.S. 637, 645 (1976). It is evident that a defendant cannot make a truly voluntary or intelligent admission that he or she committed the offense charged unless he or she is aware of its essential elements and their relationship to the facts of the particular case; the defendant must be given "notice of what he is being asked to admit." *State v. Holsworth,* 93 Wash. 2d 148, 607 P.2d 845, 847 (*quoting Henderson v. Morgan* at 647). *See Commonwealth v. Ingram,* 455 Pa. 198, 316 A.2d 77, 80 (1974).

One commentator has noted:

"[t]he basic rationale for requiring protection of a defendant pleading guilty is that our democratic tradition is grounded in the capacity of a well informed citizenry to make intelligent decisions about its future. It is patently unjust to allow a citizen, whether guilty or not, to make a decision which automatically imprisons him when a more informed person in the same cir-

cumstances may go free. If the defendant lacks a basic understanding of his position within the legal system, it is essential that it be explained to him. . . ." Notes, *The American Bar Association's Standards On Criminal Justice And Wis. Stat. Section 971.08,* 1971 Wis. L. Rev. 583, 588 (1971).

The trial court has great flexibility in creating a record at the plea hearing to demonstrate that the defendant understands the nature of the crime charged. We do not, and have not, established mandatory or inflexible guidelines with respect to the record at a plea hearing. *See Bartelt* at 483–84, n. 3.

One way to assure that the defendant understands the nature of the charge is for the trial court to summarize the elements of the crime charged, relating them to the facts of the case.[3] A simple method for doing so is to refer to the uniform jury instructions. These instructions will be useful in advising the defendant of a crime's requisite elements in language which is understandable.

The court may, at the time of the taking of the plea, also make reference to the transcripts from prior hearings which may help establish and reflect the defendant's understanding of the nature of the charge. What is absolutely essential, however, is that the record at the plea hearing demonstrate that the defendant understands the nature of the crime charged, and that he or she understands it at the time of the taking of the plea.

While the trial judge's constitutional duty to establish defendant's understanding of the charge on the record does not depend upon whether the charge is complex or simple, the trial judge must be even more solici-

---

[3] However, when apprising the defendant of the nature of the offense, "a description of every element of the offense . . ." is not always required. *Henderson* at 647 n. 18. *See State v. Holsworth,* 607 P.2d 845, 847–48, n. 3 (1980).

tous in fulfilling this duty when the charge is not readily understandable by a lay person. *Nash* at 302, n. 6. In the instant case, Cecchini was charged with endangering safety by conduct regardless of life, contrary to sec. 941.30, Stats. There are three elements of this crime: 1) the conduct must be imminently dangerous to another; 2) the conduct must be of such a character as to evince a depraved mind regardless of human life; and 3) the conduct must endanger the safety of another. *Broadie v. State,* 68 Wis. 2d 420, 424, 228 N.W.2d 687 (1975). Despite the complexity of these elements, the trial court neglected to advise Cecchini as to any of the elements of the crime; there was no attempt to inform the defendant of the law in relation to the facts. The trial court failed to offer any guidance whatsoever to Cecchini that would have enabled him to understand the nature of the charge against him.

The sum and total of the trial court's advisement regarding the nature of the charge was as follows: "THE COURT: Okay. Now, they allege that on October 10, 1983 you endangered another's safety by conduct imminently dangerous to another and evincing a depraved mind regardless of human life and that you endangered the safety of Brian Czuper. And how do you plead to that charge?" This advisement does not meet constitutional due process standards.

We note that a defendant may plead guilty or no contest for a variety of reasons. A defendant may decide, as a matter of strategy or expedience, to "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford,* 400 U.S. 25, 37 (1970). Trial courts are permitted to accept such a plea

if they find a sufficient factual basis exists for doing so. *Id.*

However, while it is permissible for a defendant to enter a valid guilty plea and refuse to admit every element of the crime, it is not acceptable for a court to accept a plea of guilty or no contest in the absence of a demonstration of the defendant's understanding of the nature of the charges. *Ingram* at 80. No such demonstration was made in this case.

We conclude that the guilty plea taken in this case did not conform to the constitutional minimums set forth in *Boykin* and *Ernst*. The trial court neglected "[t]o establish the accused's understanding of the nature of the crime with which he is charged. . . ." *Ernst* at 674. Given that the defendant's understanding of the nature of the charge is crucial in ensuring both the voluntariness and intelligence of the plea, we conclude that the plea failed to meet the due process standard of a knowing and voluntary relinquishment of specifically stated constitutional rights. Therefore, Cecchini must be permitted to withdraw his plea of no contest as a matter or right and plead anew.

*By the Court.*—The order of the trial court is reversed with directions.