STATE, Respondent, v. BESSO, Appellant.

*No. State 214 (1974). Submitted on briefs February 4, 1976.—Decided April 20, 1976.*
(Also reported in 240 N. W. 2d 895.)

---

[1] *In re Booth* (1854); 3 Wis. 13 (*1); *Ex parte Booth* (1854), 3 Wis. 134 (*145); and *In re Booth & Rycraft* (1854), 3 Wis. 144 (*157).

For the appellant the cause was submitted on the brief of *James A. Walrath* and *Shellow & Shellow* of Milwaukee.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general and *Thomas J. Balistreri,* assistant attorney general.

HEFFERNAN, J.   The defendant, Roza Besso, was found guilty on her pleas of guilty to two charges of theft. The first was for a felony, sec. 943.20 (1) (a) and 943.20 (3) (b), Stats. The second charge was for misdemeanor theft, sec. 943.20 (1) (a) and 943.20 (3) (a). In respect to each of these, she was charged under sec. 939.05 as a party to the crime. On the felony charge she was sentenced to three years at the Wisconsin Home for Women at Taycheedah; and on the misdemeanor charge she was fined $200 and costs, with the imposition of the sentence withheld and with the condition that she be placed on probation for two years following her release from her term of imprisonment at the Home for Women.

She was convicted on August 19, 1974. A motion to modify the sentence was denied on October 18, 1974, and a motion to withdraw the pleas of guilty was denied on December 13, 1974. The appeal is from the denial of these orders. We affirm.

Roza Besso, on this appeal, alleges that the orders appealed from should be reversed, because the trial court erred when it failed to make proper inquiries in respect to the reliability and competency of the interpreter who translated the court's questions and the defendant's answers at the guilty-plea hearing. She also alleges that the record made at the guilty-plea hearing failed to demonstrate that she understood the nature of the proceedings against her, and failed to show that she intelligently and knowingly waived her constitutional rights. We decide each of these claims adversely to the defendant.

The record shows that Roza Besso was a young Gypsy woman who, with two others, also Gypsies, allegedly engaged in a number of thefts from the homes of residents of Milwaukee. It was alleged that the *modus operandi* was for the three women to visit a home; and while two of them diverted the attention of the householder, the third pilfered money or articles of personal property from the premises.

The three women were arraigned at the same time. On February 11, 1974, each of the defendants entered pleas of not guilty. Only the appeal of Roza Besso is before us.

At the time of the arraignment, counsel told the court that the defendants were unable to understand English. Counsel suggested that an interpreter be appointed to protect the rights of the defendants, who allegedly spoke only Gypsy.

On April 25, 1974, a hearing was convened to determine the language capability of the defendants. During the course of those proceedings, the court used its own

interpreter, who was able to converse with the defendants, to some degree at least, in Polish.

The prosecution at this hearing called three of the women who allegedly were victimized by the defendant Besso. Ethyl Wichmann testified that she conversed with Besso and her companions for about fifteen minutes, and that Besso, on at least one occasion, spoke to her in English. Pauline Smole testified that Besso spoke to her mostly in English and some Polish. Pauline Smole stated that Besso spoke English quite well, was easy to understand, and she appeared to have no difficulty in understanding Smole. A third witness, Louise George, testified that when Besso came to her house, she spoke in English, complained of being cold, and asked for a drink of water. Louise George testified that she had no trouble in understanding the defendant and thought that Besso understood her.

At the conclusion of these proceedings, the trial court asked the court interpreter for his opinion. He stated that the defendants, including Besso, understood some English and some Polish, but he did not know whether it was sufficient for the case.

The trial judge, despite the assertion of defense counsel, found that two of the defendants, one of whom was Besso, understood some English. The judge stated:

"Two of them, Kristine and Roza speak fluent Polish and were able to communicate with Mr. Sklenarz. All of them have some working command of the English language, maybe not enough for a trial . . . ."

The judge stated that two men who spoke Gypsy and were acquaintances of the defendants would be permitted to interpret for them, and, in the event those interpreters were not available, the defendants would be given a Polish interpreter.

On August 19, 1974, Roza Besso appeared with the other two defendants. All of the defendants, pursuant to

a plea bargain, changed their pleas to guilty. As the result of the plea bargain, a burglary charge was reduced to a misdemeanor theft, another burglary charge was dismissed, and a third charge was reduced from burglary to felony theft.

The trial judge recited the elements of this plea bargain to Roza Besso in English. When asked whether she understood the bargain, she replied that she did not. At that point, Lakatosz, an acquaintance of Roza Besso, who understood the Gypsy language, was sworn as an interpreter. Besso had previously stated that she understood Gypsy. She did not object to the appointment of Lakatosz as an interpreter. The court then instructed Lakatosz to translate the plea bargain from English to Gypsy. The trial judge then repeated the elements of the plea bargain. In response to whether she accepted that plea bargain, Besso, apparently through the interpreter, stated, "Yes." The interpreter stated that she understood the plea bargain.

An additional condition of the plea bargain was that full restitution in the amount of $4,760 be paid by the defendants prior to the acceptance of the guilty pleas. This money was paid in open court by one Strauss, who identified himself as King of the Gypsies.

Through the interpreter, the defendants were asked whether any threats or promises had been made in exchange for the waiver of their constitutional rights. They were told by the court that they had a constitutional right to a 12-man jury and a right to face their accusers. They were told that they had the right to remain silent. In response to each of these admonitions, the interpreter stated that the defendants understood. The court noted that each defendant nodded her acquiescence.

The defendants, including Roza Besso, were asked how much education each had. The interpreter responded, saying they had no schooling. Addressing himself direct-

ly to Roza Besso, the judge asked, "But you understand me?" Besso responded, "Yes." The question was repeated, "Roza, did you understand me?" The defendant again responded personally, "Ya." The court then stated, "She understands, because we had a complete hearing here. These ladies talked broken English but good enough English to get along with these fine people on our southwest side."

The trial judge then asked each counsel whether he was satisfied that his client "knowingly, intelligently, voluntarily, prudently and providently are giving up their constitutional rights and pleading guilty . . . ." Attorney Terrance Pitts, representing Roza Besso, gave the somewhat equivocal answer:

"Based upon her—their facial expressions here in court—and I am relying upon the interpreter who is here in court and based upon the fact that she did make her mark on the jury waiver. She is illiterate, cannot read or write, but based upon what I have seen here in court—"

In each case and in respect to each count, the trial judge restated through the interpreter the possible sentence that could be imposed in the event the pleas of guilty were accepted. He also asked each defendant personally whether that defendant was satisfied with her lawyer's representation. Besso responded personally and through her interpreter that she was satisfied with the representation afforded by her lawyer, Terrance Pitts.

A *prima facie* case was produced by the state which proved the elements of the crime and identified the witnesses and the defendants. Besso's counsel was given the opportunity to cross-examine these witnesses, and Besso was asked whether she wished to challenge any of the testimony in the *prima facie* case. She declined. She also stated, through her interpreter and personally, that she did not wish to testify.

Following these proceedings, the guilty pleas were accepted and the sentences were imposed. Prior to sentencing, Roza Besso was given the right of allocution, and she spoke personally to the judge in English, stating, "I want to go home because I got two children." The court, apparently speaking to her counsel, then said, "She speaks better English than you do, better than the interpreter, and I have just been tormented by this case, this malarky that she can't speak English. I know that she can speak English, because I talked to her in English. Anything else?" Besso responded, again personally, "No."

On October 18, 1974, the defendant moved the circuit court to reduce the sentence. A psychiatrist, Dr. Theodore Trusevich, director of the Milwaukee County Health Center and a native of Poland, testified for the defendant. He said that he was able to communicate with her in Polish, but she had a very low intelligence, below an IQ level of 90. He stated, in his opinion, that, although Besso understood part of what happened in court, she was unable to understand the significance of what was done, because of her lack of education and her low intelligence.

On a subsequent hearing held on December 13, 1974, Dr. Trusevich again testified, stating that Besso pleaded guilty only because an interpreter told her she could go home if she pleaded guilty. The motions to reduce the sentence and to withdraw the guilty pleas were denied.

While it is evident from the record that Roza Besso lacked facility in the English language and could neither read nor write, there is substantial evidence in the record to indicate that she had sufficient knowledge of English to answer responsively on some occasions. There was also evidence that she was able to make herself understood in English at the time of the alleged thefts.

On the other hand, while the record does not demonstrate that Roza Besso fully understood the proceedings

on the basis of her own knowledge of the English language, the court appointed an interpreter who spoke the Gypsy language.

The record fails to show any allegation that the Gypsy interpreter, Lakatosz, made any error in translation. Nor is there any claim of bias on his part. There is no criticism of his function as an interpreter. There is no argument by Besso that the interpreter misstated or inadequately explained any of the concepts that a defendant must understand in order to make a plea of guilty.

The selection of a suitable person as an interpreter is within a trial court's discretion. *Gil v. State* (Fla. App. 1972), 266 So. 2d 43. On review, the burden is on the appellant to show that the interpreter was in any way deficient. *State v. Rios* (1975), 112 Ariz. 143, 539 Pac. 2d 900. A trial court's discretion in the choice of an interpreter will not be upset unless there is evidence showing that a defendant has been prejudiced by the interpreter's performance. *Chee v. U. S.* (9th Cir. 1971), 449 Fed. 2d 747. Although a trial court has the duty to choose the most competent and the least biased person available, the defendant must show that some injustice has resulted because of the appointment of the interpreter. *Kley v. Abell* (Mo. App. 1972), 483 S. W. 2d 625.

The mere fact that Lakatosz was rather perfunctorily accepted and sworn by the judge is not probative of incompetence in the instant case. The entire tenor of the record reflects that he was an acquaintance and possibly a friend of the defendant. No objection was made by any of the parties whom he served as interpreter, and there is no claim that he was biased or that he lacked the capacity to translate.

If an objection is to be made, it must be made as soon as any incapacity or deficiency becomes apparent. *Collier v. State* (1966), 30 Wis. 2d 101, 104, 140 N. W. 2d 252. Besso's acquiescence in the acceptance of the

interpreter and her failure to object, even at this late date, to either his competence or bias evinces a waiver in respect to any objection to Lakatosz as an interpreter.

If the record indicated or gave some inkling that justice had not been done, this court could nevertheless reverse under sec. 251.09, Stats., in the interest of justice. However, there is no evidence whatsoever that justice has miscarried in the instant case because of the lack of a competent interpreter.

We also conclude that the transcript of the record failed to demonstrate that Besso should be allowed to withdraw her pleas of guilty because the acceptance of the pleas resulted in a manifest injustice. Such a withdrawal is permitted whenever it appears that a defendant did not voluntarily and intelligently enter a plea of guilty.

Recapitulating other cases, this court has stated:

" '. . . the court will vacate a plea of guilty shown to have been unfairly obtained or given through ignorance, fear or inadvertence . . . .' " *State v. Jackson* (1975), 69 Wis. 2d 266, 272, 230 N. W. 2d 832.

The burden, however, to show these elements is upon the defendant. A defendant must show by clear and convincing evidence that the plea was not knowingly and voluntarily entered and that the withdrawal of the plea is necessary to prevent manifest injustice. *Birts v. State* (1975), 68 Wis. 2d 389, 228 N. W. 2d 351; *Craker v. State* (1974), 66 Wis. 2d 222, 223 N. W. 2d 872.

The question, however, is initially directed to the discretion of the trial court; and only if this court can conclude that the trial court abused its discretion in refusing to permit the defendant to withdraw her guilty pleas, will this court reverse.

The record here shows that the trial judge complied with the guidelines of *Ernst v. State* (1969), 43 Wis. 2d 661, 666, 170 N. W. 2d 713. The trial judge, at the time of the taking of the guilty pleas, elicited answers through

the interpreter which showed that the defendant had had no formal schooling. He repeatedly, through the interpreter and personally, advised the accused of the crimes with which she was charged and the punishments to which she could be subjected. He ascertained through the interpreter that no promises or threats had been made in connection with the proposed pleas of guilty. He also determined, by insisting on the state's presentation of a *prima facie* case, that the facts were sufficient to constitute the offenses which were charged in the information to which Roza Besso pleaded guilty. Besso was, throughout, represented by counsel; and she, both personally and through the interpreter, stated she was satisfied with his representation.

While it is undisputed that Besso had only a meager knowledge of the English language, she had with her an interpreter who spoke her own language and with whom she seemed entirely satisfied. The trial judge, in respect to the admonitions given her prior to taking the pleas of guilty, not only addressed his questions to the interpreter and elicited the interpreter's responses gained in his conversations with Besso, but also specifically and personally asked the defendant whether she understood, and each time she responded personally to the judge that she did.

There is no doubt that the trial judge exhaustively went through the procedure which this court requires for the taking of a voluntary and knowledgeable guilty plea. On the other hand, when the trial judge asked Besso's attorney whether he was satisfied that the defendant understood the consequences of her pleas, the response was somewhat equivocal, but it was the clear tenor of his statement that he was satisfied from her manifestations that she did understand.

Evidence was also adduced in this respect at the postconviction hearings. Dr. Theodore Trusevich testified at the two postconviction hearings which considered the

motions to modify the sentence and to withdraw the guilty pleas. He stated that, although he was able to communicate with Besso in Polish, she was of low intelligence and was culturally deprived; and because of these factors, he gave the opinion that she did not entirely understand the guilty plea proceedings. The doctor was of the opinion that the defendant did not understand the legal concepts of arraignment, trial by jury, and the right to confront her accusers. He also testified that, on at least two occasions, the defendant stated that she only pleaded guilty because she was told that she could go home if she pleaded guilty. It is clear that the physician gave credence to Roza Besso's assertions, and on those assertions he based his testimony.

In respect to the statements of Roza Besso which were repeated by the physician, they were simply disbelieved by the trial judge, and the trial judge acted within his discretion when he concluded that no credence should be placed on the defendant's statement that anyone had represented to her that she would be permitted to return to her home if she pleaded guilty.[1]

On the motion to withdraw the pleas of guilty, Roza Besso testified, with Dr. Trusevich acting as her interpreter. She stated that she did not understand what was going on at the time the guilty pleas were taken, and that she did not understand the legal concepts that were implicated by her pleas of guilty. The trial judge, however, chose to disbelieve her. He pointed out that the offenses for which she was charged involved the theft of property where deception and deceit was the underlying method of operation.

[1] It is significant that on the motion to withdraw the pleas, the interpreter Lakatosz was not called. Although Roza Besso asserted that "an interpreter" told her she could go home if she pleaded guilty, no attempt was made to show what interpreter, if any, made that representation. No attempt was made to show that Lakatosz made that statement or any misstatement.

In view of the circumstances of this case, the trial judge was not obligated to give credence to Roza Besso's testimony.

We cannot conclude that Roza Besso showed by clear and convincing evidence that her pleas of guilty should be withdrawn or that they resulted in a manifest injustice. There is no evidence to show that the interpreter, an acquaintance of hers, misinterpreted or misstated the court's questions or failed to relay her responses accurately to the court. There was substantial evidence from which the trial judge could conclude that the defendant, even without an interpreter, was fully cognizant of what was going on and aware of the implications of her guilty pleas. The record gives rise to the inference that the interpreter Lakatosz was supplied by the Gypsy community for the benefit of the defendants. Even the King of the Gypsies himself was present at the hearing to make restitution in a very substantial sum.

In view of the nature of the offenses with which Besso was charged and found guilty, the sentences were not excessive. The record fails to show that the trial judge abused his discretion in failing to grant the motion to withdraw the pleas of guilty or that he abused his discretion in refusing to modify the sentences.

*By the Court.*—Orders affirmed.