Hillsborough
No. 7454

STATE OF NEW HAMPSHIRE

v.

RODNEY LAROCHE

February 28, 1977

*William E. Brennan,* of Manchester, by brief and orally, for the defendant.

*David H. Souter,* attorney general, and *Robert V. Johnson II,* assistant attorney general (*Mr. Johnson* orally) for the state.

LAMPRON, J.   Defendant appeals from the denial of his motion to set aside his plea of guilty to the charge of attempted murder, RSA 629:1 I; RSA 630:1-a (I)(a), because his plea had not been entered voluntarily. A hearing was held on defendant's motion on January 15, 1976, and on January 19, 1976, the Trial Court (*Flynn,* J.) denied the motion, finding that the plea of guilty had been made "voluntarily and intelligently free from concern." Defendant filed his exception to this ruling. Defendant's motion for reconsideration and to set aside his plea of guilty was also denied, subject to his exception. All questions of law raised by these exceptions were reserved and transferred by *Flynn,* J.

Defendant was indicted for the crime of attempted murder by stabbing. His case was scheduled for trial by jury on March 10, 1975. On that date defendant's then attorney was fully prepared to go forward with trial. That morning, however, after learning that a codefendant would testify against his client "coupled with substantial other evidence that I expected against him," defendant's attorney discussed with the county attorney other possible dispositions of the case. In the course of these discussions, the county attorney indicated that he would recommend a sentence of five to fifteen years if defendant pled guilty to the charge; but that if defendant proceeded with trial he would recommend the maximum sentence for the crime plus some additional time under the extended term provisions of RSA 651:6 I(d).

The county attorney and defendant's then attorney reached an agreement subject to the approval of the defendant that he would undergo a polygraph examination to determine the extent of his participation in the stabbing of the victim. It was agreed that if he "passed" the examination, that is, if it was determined that he himself had not stabbed the victim, defendant would plead guilty to a reduced charge of aggravated assault with a recommended minimum sentence of approximately three-and-one-half years. If defendant did not "pass" the examination, it was agreed that he would plead guilty to the charge of attempted murder with a recommended sentence of five to fifteen years. Defendant's attorney understood the agreement to mean that a trial on the charge

was no longer an option. At the hearing on defendant's motion to withdraw his guilty plea, his attorney at the time of the plea testified that defendant had agreed to this arrangement.

Defendant then underwent the polygraph examination, but did not "pass." Defendant's then attorney informed him that this meant defendant would enter a plea of guilty to the charge of attempted murder with a recommended sentence of five to fifteen years, pursuant to the agreement. However, defendant told his attorney that he did not want to enter a plea, but wanted a trial. Defendant's attorney was clearly upset that defendant did not want to honor the agreement but wanted a trial. Raising his voice and throwing his file down on a chair he told defendant that he could not go back on the agreement they had made with the county attorney, and that he therefore could not represent defendant in a trial on the charge. "I told him if he wanted a trial it would well be his right; under the circumstances he wouldn't have it with me representing him."

Defendant's then attorney did not recall telling defendant anything about the possibility of obtaining another attorney to represent him at trial "although I might very well have." Defendant testified that he was not told of any such possibility. Defendant further testified that from what his attorney did tell him he concluded that he would be unable to obtain any attorney to represent him at a trial. His counsel testified: "I did not at any time tell him no other lawyer would try his case." The testimony of defendant and of his attorney was in conflict as to whether, at that point, defendant also told his attorney that he was not guilty. All of the above took place just before defendant and his attorney entered the courtroom on the afternoon of March 10, 1975. However, despite his alleged insistence outside the courtroom that he wanted a trial, in the courtroom defendant entered the plea of guilty to the charge of attempted murder which he now seeks to withdraw.

The record shows that before accepting defendant's plea of guilty to the charge of attempted murder, the trial court asked, and defendant admitted, that he had gone over with his counsel the "Acknowledgment of Rights" form before the court and signed it of his own free will and accord. Asked by the court whether he was pleading guilty to the offense of attempted murder freely and voluntarily, defendant responded in the affirmative. Defendant also stated that he understood that the sentencing rests with the court

and that it could impose a sentence of up to fifteen years. When asked by the court whether he was satisfied with his attorney's advice, defendant answered, "Yes, sir."

Upon further questioning by the court, defendant stated that he was willing to waive his right to a jury trial where his guilt would be decided by twelve persons. Defendant also was told that at such a trial he would not have to testify against himself and that he would face his accusers and have the right to cross-examine them. When asked why he was pleading guilty, defendant stated because "I am guilty." "Q. You attempted to shoot somebody? A. No. This individual got stabbed. Q. Stabbed . . . And you attempted to do that? A. Yes, sir." *State v. Allard*, 116 N.H. 240, 356 A.2d 671 (1976); *cf. Henderson v. Morgan*, 426 U.S. 637 (1976).

The trial court imposed a sentence of "not more than 15 years nor less than 5 years at hard labor at State's prison." This was the sentence which the county attorney had agreed to recommend in plea bargaining. Hence the problems which arose in *State v. Farris*, 114 N.H. 355, 320 A.2d 642 (1974) and *State v. Goodrich*, 116 N.H. 477, 363 A.2d 425 (1976), where the trial court imposed sentences greater than those recommended are not present in this case.

Defendant testified at the hearing on his motion to set aside his plea that the reason he did not tell the court at his arraignment, where he pleaded guilty, about still wanting to go to trial and about his then attorney's refusal to represent him at trial, was that he "didn't want to come out and say his attorney wanted to quit outside the courtroom," as he was "trying to cover up" for his attorney. Defendant contends that because the entry of his plea of guilty was motivated by his fear of not having an attorney to represent him at trial it was not voluntary.

At that hearing defendant also testified that on the morning of March 10, 1975, he took eight or nine Mellaril tablets, a drug for which he had a prescription, and that he consequently was feeling "pretty wired out" and "light headed." However, he presented no medical evidence as to the nature or effects of the medication. His attorney also testified that defendant had not given the appearance that his comprehension or other abilities were at all impaired by any drugs. Defendant argues that even if his belief that he could not obtain an attorney for trial is not alone sufficient for a finding of involuntariness, that factor combined with other factors, namely, that this was his first felony offense, that he was under the influence of the Mellaril, and that he was afraid of the possibility of an

extended prison term under RSA 651:6 I(d) if he went through with trial, served to make his plea of guilty involuntary.

■ Although on its face the record of the March 10, 1975, arraignment shows defendant's entry of his plea of guilty to have been made voluntarily, this does not preclude defendant from later disavowing his statements and proving matters outside the record which would negate the original determination of voluntariness. *Fontaine v. United States*, 411 U.S. 213 (1973); *United States v. Hawthorne*, 502 F.2d 1183, 1185 (3d Cir. 1974); *Martinez v. United States*, 411 F. Supp. 1352, 1358 (D.N.J. 1976). However, the burden at the later proceeding is on the defendant to prove that his earlier plea was not made voluntarily and that withdrawal of the plea must be allowed to correct a manifest injustice. *State v. Besso*, 72 Wis. 2d 335, 344, 240 N.W.2d 895, 899 (1976); *Szarwak v. Warden*, 167 Conn. 10, 355 A.2d 49 (1974); *see* ABA Standards Relating to Pleas of Guilty § 2.1 (Approved Draft, 1968).

■ Defendant was provided ample opportunity at the time he entered his plea to inform the court that he wanted to go through with a trial, and that he was having difficulties with his attorney. However, he did not do so. Defendant's later explanation as to why he did not take advantage of the trial court's questioning to expose the situation did not have to be believed by the court hearing his motion; nor was his explanation such as to compel a finding that his guilty plea was entered involuntarily.

■ The other factors asserted by defendant are likewise insufficient to compel a finding of involuntariness. In view of the extensive inquiry made of defendant by the court in addition to the advice of his then attorney, defendant's lack of experience in prior felony proceedings cannot be said to have impaired his understanding or the voluntariness of his actions. Absent any evidence as to the effects of Mellaril, and in light of the testimony that defendant's behavior did not appear at all impaired by the drug, this factor also is insufficient to compel a finding of involuntariness. *See Jones v. State*, 71 Wis. 2d 750, 238 N.W.2d 741 (1976). The fear of a greater punishment should a defendant go to trial is also not grounds for requiring a finding of involuntariness in entering a plea of guilty. *Brady v. United States*, 397 U.S. 742 (1970).

■ Although we cannot condone defendant's attorney's failure, if it occurred, to fully inform defendant of his right to obtain

another attorney should he insist on going to trial, we hold that there was no showing of manifest injustice which required the trial court to grant defendant's motion to withdraw his plea of guilty. Considering all the factors which defendant contends combined to render his guilty plea involuntary, we cannot hold on the record before us that the trial court abused its discretion in denying defendant's motion to withdraw his plea. We therefore affirm its ruling. *State v. Scelza,* 134 Vt. 385, 359 A.2d 660 (1976); *State v. Besso,* 72 Wis. 2d 335, 240 N.W.2d 895 (1976); *State v. Bagnall,* 61 Wis. 2d 297, 212 N.W.2d 122 (1973).

*Exceptions overruled.*

Douglas, J., did not sit; the others concurred.