Hillsborough
No. 89-558

THE STATE OF NEW HAMPSHIRE

v.

SCOTT SARETTE

April 23, 1991

*John P. Arnold*, attorney general (*David S. Peck*, senior assistant attorney general, on the brief, and *Peter G. Beeson*, senior assistant attorney general, orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. The defendant appeals the denial of his motion to withdraw his plea of guilty to the charge of second degree murder, alleging he was "influenced" by psychotropic medication at the time he entered his plea. A hearing was held on the defendant's motion on October 27, 1989, and on November 3, 1989, the Superior Court (*Groff*, J.) found that the medication "did not affect [the] defendant's cognitive function . . . [or] his judgment," but actually "reduced distractions and enabled him to make a more reasoned decision." Thus, the court found that the defendant failed to offer a "fair and just" reason to allow withdrawal of his guilty plea and denied the motion. We affirm.

On September 23, 1988, the defendant confessed to his brother, and then to the Hopkinton police, that he had killed his estranged wife, Carol Ann Sarette. He told the police they could find her body in the bedroom of her Manchester apartment. Upon the discovery of the body, the defendant was arrested for murder. While incarcerated, the defendant escaped from the Hillsborough County House of Correction. He was apprehended and subsequently charged with the crime of escape. The defendant went to trial on both charges in April, 1989, after he rejected a plea offer of thirty-two years to life on a charge of second degree murder. That trial ended in a mistrial as to both charges.

While the defendant waited for a new trial, he was seen on July 19, 1989, by Dr. Reinhard, the Unit Psychiatrist at the State Prison, for treatment of his increasing agitation and anxiety. Dr. Reinhard prescribed Benadryl to help the defendant sleep and twenty-five milligrams of Mellaril three times a day for twenty-eight days to relieve his agitation. The prescription of Mellaril was renewed in August, 1989.

Sometime after July 19, 1989, the defendant decided to accept the State's standing plea offer of thirty-two years to life on a charge of second degree murder and a concurrent 3½ to 7 years on the escape charge. On August 18, 1989, the defendant appeared before the Superior Court (*Groff*, J.) in order to enter his plea. After consulting with his attorneys, the defendant signed an acknowledgment of rights form, after which the court began a plea colloquy with the defendant in order to advise him of his rights and the consequences of entering a guilty plea. The defendant waived his constitutional rights as each was explained and admitted that he knowingly caused the death of Carol Ann Sarette; he also admitted the facts charged in the escape indictment. The court then inquired as to whether the defendant was taking any medication or drugs on a regular basis. At that time, the defendant's counsel indicated that the defendant had been taking Mellaril and one other drug for about a month. Both of the defendant's attorneys, having talked with the defendant "a good bit during that period of time," believed that his "perception, his awareness of what's going on around him and his judgment [are] not adversely affected by these drugs . . . ." Additionally, defense counsel stated that they had spoken with Mr. Sarette that morning, in order to determine this very point, and they continued to believe that the defendant was not adversely affected by the medication. One of the defendant's attorneys stated that he was "convinced" that the defendant was knowingly, voluntarily and intelligently pleading guilty. Furthermore, the defendant stated that the drugs caused no problems or side effects. The trial court specifically observed that the defendant did not appear to be under the influence of any medication, drugs or other substances which might affect his judgment. The court accepted the defendant's guilty plea on both offenses and scheduled sentencing for October 18, 1989.

On October 4, 1989, the defendant's prescription for Mellaril was discontinued. On October 17, 1989, one day before he was to be sentenced, the defendant contacted his attorney and expressed his desire to withdraw his plea. A hearing on the defendant's motion was held before the Superior Court (*Groff*, J.) on October 27, 1989. At

that hearing, Dr. Reinhard testified about his experiences in treating the defendant and described some of the general qualities and effects of Mellaril.

Although Dr. Reinhard did not have any knowledge of how Mellaril specifically affected the defendant, he testified that the low dose prescribed for the defendant would usually lessen anxiety and have a calming effect upon a person's personality. Dr. Reinhard also explained that one reason for prescribing the drug was to allow an individual to focus on matters requiring decision-making ability. Otherwise, Mellaril would not significantly affect the defendant's ability to collect and assess information properly, according to Dr. Reinhard's testimony. In addition, the doctor testified that any significant effects caused by Mellaril would cease within twenty-four hours of its discontinuance, and that the drug would probably be eliminated entirely from the defendant's system within four days of discontinuance.

The trial court considered Dr. Reinhard's testimony and found that the defendant's use of Mellaril did not adversely affect his judgment, but actually enabled him to make a more reasoned decision and reduced outside distractions from the decision-making process. The court also noted that there was a substantial delay before the defendant communicated any desire to withdraw his plea, and that the defendant had not been taking Mellaril for nearly two weeks when he finally decided to withdraw his plea. Although the court recognized that withdrawal of the plea would not prejudice the State, it concluded that the defendant simply had "changed his mind at the eleventh hour," and that this change of heart did not amount to a "fair and just" reason for withdrawal. For these reasons the court denied the defendant's motion.

On November 9, 1989, the defendant was sentenced to thirty-two years to life for second degree murder and 3½ to 7 years, concurrent, on the charge of escape. At this sentencing hearing, the defendant again admitted that he had knowingly killed his wife, and stated that he accepted responsibility for the crime he had committed.

The sole issue before us is whether the superior court erred in ruling that the defendant failed to present a "fair and just" reason for withdrawing his guilty plea. The defendant contends that his medicated condition "influenced" his decision to accept the plea. He further asserts that his withdrawal motion should be granted, because the State failed to establish that any prejudice would result if he were allowed to withdraw his guilty plea. We disagree.

At the outset, we note that the defendant does not challenge the knowing, intelligent and voluntary nature of his plea. Additionally, the record illustrates the trial court's careful inquiry into the voluntariness of the defendant's plea and the defendant's appreciation of the consequences of waiving his right to a trial. Instead, the defendant contends that the very fact that he was medicated with Mellaril when he entered his guilty plea is a "fair and just" reason for withdrawal of that plea. The issue in the case is a matter of first impression in New Hampshire. Although this court has determined the circumstances which will permit a post-sentence motion to withdraw a guilty plea, this case presents our first opportunity to determine the circumstances which will permit a presentence motion to withdraw a guilty plea. *See State v. Torres*, 121 N.H. 828, 435 A.2d 527 (1981). Therefore, we must first determine the appropriate standard by which to consider a motion to withdraw a guilty plea when the motion is filed before sentencing has been rendered.

I. *Fair and Just Standard*

The trial court applied Standard 14-2.1(a) of the ABA Standards for Criminal Justice, and interpreted federal cases applying Rule 32(d) of the Federal Rules of Criminal Procedure. According to the federal standard, derived from dictum in *Kercheval v. United States*, 274 U.S. 220, 224 (1927), a presentence withdrawal motion will be granted if the defendant can establish a "fair and just" reason for doing so. Standard 14-2.1(a) is essentially consistent with Rule 32(d) of the Federal Rules of Criminal Procedure. *See* III STANDARDS FOR CRIMINAL JUSTICE, Standard 14-2.1(a) commentary at 14.53 (1980); FED. R. CRIM. P. 32(d). Standard 14-2.1(a), in part, provides:

> "After entry of a plea of guilty or nolo contendere and before sentence, the court should allow the defendant to withdraw the plea for any fair and just reason unless the prosecution has been substantially prejudiced by reliance upon the defendant's plea."

III STANDARDS FOR CRIMINAL JUSTICE, Standard 14-2.1(a) (1980).

This Court has in the past found support in the ABA Standards when determining whether a defendant should be permitted to withdraw a plea. *See State v. Goodrich*, 116 N.H. 477, 478, 363 A.2d 425, 426 (1976) (citing ABA Standards relating to the function of the trial judge). We are persuaded that the "fair and just" standard, as enunciated by Standard 14-2.1(a), is the proper standard by which to assess presentence plea withdrawal motions. We also find that the

interpretations of Rule 32(d) and Standard 14-2.1(a) are essentially consistent, and that federal cases applying Rule 32(d) are as helpful as those that apply Standard 14-2.1(a).

 Therefore, a defendant who wishes to withdraw a guilty plea before sentencing need only present a "fair and just" reason, rather than show the "manifest injustice" needed to withdraw a plea after sentencing. However, the defendant has the burden of proving sufficient grounds for the withdrawal motion, regardless of when it is filed. *See United States v. Ramos*, 810 F.2d 308, 311 (1st Cir. 1987); *State v. LaRoche*, 117 N.H. 127, 131, 370 A.2d 631, 634 (1977). Granting withdrawal of a plea rests with the sound discretion of the trial court, and we will not set aside a trial court's findings unless the defendant shows an abuse of that discretion. *United States v. Ramos, supra* at 311; *see United States v. Carr*, 740 F.2d 339, 344 (5th Cir. 1984), *cert. denied*, 471 U.S. 1004 (1985); *United States v. Rasmussen*, 642 F.2d 165, 167 (5th Cir. Unit B 1981). It follows then that we next assess the trial court's findings to determine whether the defendant has established an abuse of discretion.

The trial court found that the defendant had not met his burden of showing a "fair and just" reason for the withdrawal of his guilty plea. In doing so, the court considered several factors commonly attendant to the application of the "fair and just" standard. The factors considered included: (1) whether or not the defendant has asserted his innocence, (2) whether or not the defendant has delayed filing his motion to withdraw, (3) whether the withdrawal would substantially inconvenience the court, (4) whether or not close assistance of counsel was available to the defendant, (5) whether or not the original plea was knowing and voluntary, (6) whether withdrawal would waste judicial resources, and (7) whether the State will be substantially prejudiced by the withdrawal of the defendant's plea. Federal cases applying Rule 32(d) of the Federal Rules of Criminal Procedure have considered these same factors in deciding whether a withdrawal of a guilty plea should be allowed. *See, e.g., Carr, supra* at 343–44.

 In reviewing the trial court's discussion of these factors in this case, we can find no abuse of discretion nor any error. First, the defendant has at no time asserted his innocence. Second, it is not disputed that the defendant's plea was knowing, intelligent and voluntary. Nor does the defendant challenge the court's findings that it had been inconvenienced and that judicial resources had been wasted by the proceedings in this case. Third, the record discloses that the defendant was provided with assistance of counsel at all

times. Additionally, the defendant delayed in making it known that he wished to withdraw his plea until October 17th, the day before his sentencing hearing. This delay occurred despite the fact that his Mellaril prescription had been discontinued on October 4th, nearly two weeks before he notified his attorneys of his intention to withdraw his plea. Generally, the longer a defendant delays in filing a motion to withdraw a guilty plea, the more substantial reasons he or she must proffer in support of the motion. *Carr*, 740 F.2d at 344. There was also evidence produced at the hearing on the defendant's motion that the medication would cease to have any significant effect within twenty-four hours of its discontinuance. Therefore, even if the defendant's judgment was affected by the medication, any significant effect would have ceased on the 5th of October, twelve days before he filed his withdrawal motion.

■ There is also ample evidence in the record supporting the trial court's determination that Mellaril did not affect the defendant's cognitive function. During the hearing on the defendant's motion, testimony revealed that the low dosage of Mellaril taken by the defendant had a beneficial effect, if it had any significant effect at all. Furthermore, the defendant's own counsel was acutely aware of this issue and stated that he observed nothing in the defendant's behavior which would indicate that the defendant had consumed any medication that might affect his judgment. Moreover, the trial judge, who presided at both the defendant's plea hearing (when the defendant was medicated) and the hearing on the defendant's motion to withdraw (when the defendant was not medicated), and who had an opportunity to observe the defendant, found that he did not appear to be affected by the medication. *See Pellerito*, 878 F.2d at 1538 (appellate court lacks judge's "feel" for case, because trial judge oversaw pretrial, guilty plea, and withdrawal proceedings). The defendant has not established that his judgment, emotions or thought processes were detrimentally altered or affected by his medication. Thus, the record supports the trial court's finding that the defendant sought to withdraw his plea simply because he suffered a change of heart the day before he was to be sentenced. When we view the evidence in this case in the light most favorable to the State, it is apparent that the trial court's factual findings are neither erroneous nor contrary to the manifest weight of the evidence. *See State v. Gosselin*, 131 N.H. 243, 247, 552 A.2d 974, 976 (1988). Therefore, the defendant has failed to meet his burden of proving an abuse of discretion.

## II. *The Two-Part Analysis*

We now address the defendant's assertion that any reason satisfies the "fair and just" standard if the State cannot establish that it would be prejudiced by the granting of a plea withdrawal motion. Rule 32(d) of the Federal Rules of Criminal Procedure, unlike Standard 14-2.1(a), does not explicitly require an inquiry into any prejudice suffered by the State as a result of a plea withdrawal. However, a majority of the federal courts have interpreted the rule as placing the burden on the prosecution to establish prejudice only after a defendant has provided a "fair and just" reason for withdrawing his or her plea. *See, e.g., United States v. Ramos*, 810 F.2d at 313; *United States v. Saft*, 558 F.2d 1073, 1083 (2d Cir. 1977); *see also* FED. R. CRIM. P. 32(d) advisory committee's note. *But see United States v. Savage*, 561 F.2d 554, 556 (4th Cir. 1977). The defendant argues that the trial court abused its discretion in not granting his withdrawal motion, because the court explicitly found that the State would not be prejudiced by withdrawal of his plea. The defendant's argument represents the minority interpretation of the "fair and just" standard. *See* W. LAFAVE & J. ISRAEL, CRIMINAL PROCEDURE 811–12 (5th ed. 1985).

■■ In light of the great care with which guilty pleas are accepted by trial courts, we are persuaded by the majority view, as stated in *United States v. Ramos*, 810 F.2d at 313, which breaks the inquiry below into two parts. *See* FED. R. CRIM. P. 32(d) advisory committee's note. Under the majority rule, the defendant must first establish a "fair and just" reason for withdrawing his plea. If the defendant meets the initial burden, the court must then determine whether the State will be substantially prejudiced by the defendant's withdrawal of his or her plea. The State is not required, however, to show prejudice unless the defendant has first established sufficient grounds for permitting withdrawal of the plea. *Saft, supra* at 1083; *see also United States v. Buckley*, 847 F.2d 991, 998 n.5 (1st Cir. 1988), *cert. denied*, 488 U.S. 1015 (1989); *United States v. Ramos*, 810 F.2d at 313. A court may, in the exercise of its discretion, account for any prejudice that the State may suffer as part of its weighing of the equities of a plea withdrawal motion. This consideration, however, is not a controlling factor and does not eliminate the requirement that the defendant show a "fair and just" basis for withdrawing the guilty plea. *See Carr*, 740 F.2d at 345. As our earlier discussion demon-

strates, the defendant failed to make that showing. Accordingly, we affirm the trial court's ruling.

*Affirmed.*

All concurred.