Belknap
No. 94-176

THE STATE OF NEW HAMPSHIRE

v.

JOHN LAFOREST

October 6, 1995

*Jeffrey R. Howard*, attorney general (*John C. Kissinger, Jr.*, assistant attorney general, on the brief and orally), for the State.

*McLaughlin, Hemeon & Lahey, P.A.*, of Laconia (*Matthew J. Lahey* on the brief and orally), for the defendant.

BROCK, C.J. The defendant, John Laforest, pleaded guilty to two counts of aggravated felonious sexual assault. RSA 632-A:2 (1986). He now appeals the Superior Court (*Fauver*, J.) denial of his motion to withdraw his guilty pleas and to vacate his convictions, arguing that his pleas were not knowingly and voluntarily made and that he was rendered ineffective assistance of counsel prior to making his pleas. We affirm.

In March 1991, the defendant was arrested on charges of aggravated felonious sexual assault, kidnapping, and false imprisonment. The charges stemmed from the assault of a seventy-six-year-old woman in her home in Alton. The defendant was arrested after being found in the victim's bed, naked except for his socks. The victim told police that the defendant had broken into her home and had restrained and beaten her; she also told police that the defendant had fallen asleep after raping and sodomizing her. The defendant does not dispute that when she was seen at the hospital emergency room, the victim was bleeding from her ears and had injuries to her wrists, as well as bruising and other injuries to the vaginal and anal areas.

In May 1991, the county attorney provided discovery information to the defendant, through appointed trial counsel, pursuant to Superior Court Rule 99. This material included the victim's statements, the victim's neighbor's statements, police reports, emergency room and lab reports, and other documents. The packet did not include the results of the "rape kit" performed on the victim after the assaults, however.

Trial counsel reviewed this evidence with the defendant in detail and discussed their options for further discovery. Concluding that

the primary issue in the case would be proof of penetration, trial counsel and the defendant agreed to a list of those witnesses counsel would depose, but counsel deferred further discovery until she received the results of the rape kit.

Soon thereafter, the county attorney forwarded a plea offer to trial counsel. The State offered to enter *nolle prosequi* on the charges of kidnapping and false imprisonment, and to recommend reduced sentences for the two sexual assault charges. The offer letter included the following language:

> This plea offer may be withdrawn by the State upon the filing of motions or taking of depositions by defense counsel and should not be relied upon after the taking of such actions in the absence of prior agreement by the State. In addition, the offer expires after the scheduled date of the pretrial conference.

Trial counsel pursued no further discovery after she received this letter, although she did move to extend the deadline for pretrial motions; the motion specifically stated that additional medical records were yet to be produced by the State and that counsel deemed it necessary to review these prior to making a decision regarding further discovery. At the hearing on the defendant's motion to withdraw his guilty pleas, trial counsel testified that she would have pursued further discovery, including deposing the victim and several doctors, had the defendant told her that he wanted to proceed to trial and to disregard the plea offer.

In July 1991, trial counsel received the results of the rape kit, which "did not look good" for the defendant. The results showed no evidence of sperm, semen, or internal injury but did show bruising to the anus and vagina.

The defendant entered his guilty pleas and was sentenced in July 1991. He completed and signed an "Acknowledgement of Rights" form and participated in a full *Boykin* colloquy with the court at the time he entered the pleas. *See Boykin v. Alabama*, 395 U.S. 238 (1969).

Approximately two weeks later, the defendant sent a letter to the Belknap County Clerk of Court asking the court to appoint new counsel, to allow him to withdraw his guilty pleas, and to schedule a trial on the charges against him. In this letter, the defendant proclaimed his innocence and claimed that he had entered his guilty pleas based on certain misrepresentations made to him by his appointed counsel. The court appointed new counsel, who filed the instant motion in 1993.

The defendant contends that his pleas were not made knowingly and voluntarily because the State unfairly limited his right to conduct discovery. In addition, he argues that it would be manifestly unjust not to allow him to withdraw his pleas because his trial counsel rendered him ineffective assistance.

*I. Knowing and Voluntary Guilty Pleas*

The defendant first contends that the limitation of discovery contained in the State's plea offer letter violated his right to due process and rendered his guilty pleas involuntary and unknowing. He contends that, although the requirements of *Boykin v. Alabama* were met, he should be allowed to withdraw his pleas. *See State v. LaRoche*, 117 N.H. 127, 131, 370 A.2d 631, 633 (1977).

The defendant raises his due process claim under both the State and Federal Constitutions. We analyze his claim under the State Constitution first, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 351 (1983), citing federal cases only as they are useful to our analysis, *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Because part I, article 15 of the New Hampshire Constitution provides at least as much protection to criminal defendants in this area as does the fourteenth amendment of the United States Constitution, *see State v. O'Leary*, 128 N.H. 661, 664–66, 517 A.2d 1174, 1177 (1986); *In re Eduardo L.*, 136 N.H. 678, 685, 621 A.2d 923, 928 (1993), we need not undertake a separate federal analysis. *See Boykin*, 395 U.S. at 242; *Bordenkircher v. Hayes*, 434 U.S. 357 (1978).

When a defendant moves to withdraw a prior guilty plea, he has the burden "to prove that his earlier plea was not made voluntarily and that withdrawal of the plea must be allowed to correct a manifest injustice." *LaRoche*, 117 N.H. at 131, 370 A.2d at 633; *cf. State v. Sarette*, 134 N.H. 133, 138, 589 A.2d 125, 128 (1991) (where defendant seeks to withdraw a guilty plea prior to sentencing, he need only present a "fair and just" reason for allowing such withdrawal). It is within the trial court's discretion to grant the withdrawal of a guilty plea, and the court is not required to believe the defendant's statements. *E.g., State v. Torres*, 121 N.H. 828, 830, 435 A.2d 527, 528 (1981); *see Roy v. Perrin*, 122 N.H. 88, 95, 441 A.2d 1151, 1155 (1982). We will not set aside a trial court's findings unless the defendant shows an abuse of its discretion. *Sarette*, 134 N.H. at 138, 589 A.2d at 128.

The defendant urges us to adopt a rule created by the Supreme Court of Arizona in *State v. Draper*, 784 P.2d 259 (Ariz. 1989). The *Draper* court declined to adopt a *"per se* prohibition against any plea agreement including the condition that a defendant not inter-

view the victim prior to entry of a guilty plea," *id.* at 261, but did conclude that there were circumstances under which such a condition would be so coercive as to "interfere with a defendant's due process rights," *id.* at 263. *Draper* involved an *Alford* plea, a plea of guilty despite a claim of innocence. *Id.* at 261; *see North Carolina v. Alford*, 400 U.S. 25, 38 (1970). The *Draper* court itself noted the distinctions among an *Alford* plea, a *nolo contendere* plea, and a guilty plea. *Draper*, 784 P.2d at 263 (noting that a defendant's decision to enter an *Alford* plea is directly related to knowledge of the strength of State's case). We conclude that a test such as the one enunciated in *Draper, id.* at 264, is unnecessary in New Hampshire.

In general, the State may withdraw a plea offer at any time before the defendant accepts the offer and has entered a guilty plea in reliance on it. *See O'Leary*, 128 N.H. at 665–66, 517 A.2d at 1177. The United States Supreme Court has held:

> To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is patently unconstitutional. But in the "give-and-take" of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer.

*Bordenkircher*, 434 U.S. at 363. We have stated that "a plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest." *O'Leary*, 128 N.H. at 664, 517 A.2d at 1176–77.

In the instant case, the restriction on discovery contained in the plea offer was not absolute. The letter provides that the "offer *may* be withdrawn" should the defendant pursue discovery, and that the plea offer "should not be relied upon after the taking of such actions *in the absence of prior agreement by the State.*" (Emphasis added.)

At the hearing on the instant motion, the defendant's current counsel asked the defendant's trial counsel why she did not move to take the depositions of the victim and of the doctor who performed the "rape kit" in the charged crime:

Attorney: Is it fair to say that the bottom line as you saw it in what you were advising [the defendant] is that the State wasn't going to allow any discovery prior to making the decision about accepting the plea or not?

Witness: Well, the State doesn't have any say in terms of allowing discovery. We have the right to file as many motions as we wanted in this case, and we could have done that.

Attorney: Why didn't you?

Witness: Because we were — we were considering taking a plea bargain offer, and we had —

Attorney: You were limited by that letter?

Witness: Right. If we were interested in this plea bargain offer we were limited in what we could do. If we didn't have any interest in this offer whatsoever, then there were no limits on what we could do. We could file all the motions that we wanted to in this case. But because we were seriously considering this plea offer and didn't want to reject it, because we were seriously considering it, that's why we didn't file those motions. But it was because of the paragraph in the offer that limited it.

The trial court concluded that the condition on discovery did not constitute a due process violation, and that the defendant's guilty pleas were knowing and voluntary as a matter of fact and law. We agree. The condition "imposed" by the plea offer was not a mandatory one, and the defendant was free to pursue discovery if he chose to do so, either with or without the agreement of the State. He had no right to the benefit of the plea agreement. *See id.* The State's action did not constitute direct coercion on the defendant to plead guilty. *See Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991).

■ As a matter of fact, the trial court found that the defendant and his attorney "assessed the need for further discovery," and "did not enter the plea agreement blindly." Based on this conclusion, and on the availability of much of the evidence the State possessed, the court concluded that while trial counsel

> believed the defendant should have as much information as possible before pleading guilty, in this case she felt the need for depositions was outweighed by the danger of losing a beneficial plea offer. On the facts of this case the Court cannot find that the County Attorney's letter improperly limited the defendant's ability to intelligently assess his

case and determine whether it was in his best interest to enter a plea of guilty.

After a review of the record in this case, we cannot conclude that this finding constitutes an abuse of discretion. *Sarette*, 134 N.H. at 138, 589 A.2d at 128.

## II. Ineffective Assistance of Counsel

The defendant next contends that he should be allowed to withdraw his pleas to correct a manifest injustice because he was rendered ineffective assistance of counsel. The defendant relies on essentially the same underlying facts for this claim; to wit, his "counsel's lack of diligence in pursuing discovery."

■ The defendant relies upon both the New Hampshire and the Federal Constitutions. We analyze his claim under the State Constitution first, *Ball*, 124 N.H. at 231, 471 A.2d at 351, citing federal authority only as an aid to our analysis, *see Maya*, 126 N.H. at 594, 493 A.2d at 1143. Because the New Hampshire Constitution provides at least as much protection as the Federal Constitution in this area, *State v. Sanchez*, 140 N.H. 162, 163-64, 663 A.2d 629, 630 (1995), we undertake no separate federal analysis.

We have stated that

> a defendant is as much entitled to the effective assistance of counsel when entering a plea as on standing trial, [and] we must recognize . . . the possibility that deficiencies in advice about . . . a plea may pull a lawyer's representation below the level of reasonable competence by which effective assistance of counsel is constitutionally measured.

*State v. Elliott*, 133 N.H. 190, 193, 574 A.2d 1378, 1381 (1990) (citations and quotation omitted) (defendant was not rendered ineffective assistance when trial counsel did not inform him of possible collateral consequences of a guilty plea). As in any other claim of ineffective assistance of counsel, the defendant in this case first must demonstrate that his trial counsel's performance in preparation for the guilty plea "was deficient, which requires proof that counsel made such egregious errors that counsel was not functioning as the 'counsel' guaranteed by both constitutions." *State v. Killam*, 137 N.H. 155, 158, 626 A.2d 401, 403 (1993) (quotation omitted). If he can demonstrate that his counsel's performance was deficient, he must then prove that the deficient assistance "actually prejudiced the defendant such that there is a reasonable probability that the result of the proceeding would have been different had counsel been competent." *Id.* (quotation omitted). In this case, the

defendant must prove that but for his trial counsel's deficient performance, he would not have pleaded guilty and would have insisted upon going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Unless both of these prongs are met, trial counsel's assistance was not unconstitutionally ineffective. *See, e.g., Killam*, 137 N.H. at 158, 626 A.2d at 403.

■ The superior court weighed the testimony of the defendant and his trial counsel at the hearing below and concluded that the defendant's testimony was "not credible." We will not disturb the trial court's factual findings, especially when those findings are the result of observing the live testimony of witnesses, unless the record plainly does not support them. *See id.* at 160–61, 626 A.2d at 405.

The trial court found that

> [trial counsel] and the defendant made a tactical decision not to pursue depositions prior to the plea. Both she and the defendant knew what type of testimony those depositions could have uncovered. They both had an idea what testimony [the victim] would offer at trial based on her numerous public statements. The defendant faced exposure to an extended prison term and neither [trial counsel] nor the defendant wanted to jeopardize the plea negotiations. In addition, the State's evidence, which [trial counsel] extensively reviewed, was strong; [trial counsel] believed [the victim] would be a credible witness; and the Court does not believe the defendant ever directly asserted his innocence. Furthermore, [trial counsel] took steps to protect the defendant's rights. She moved to extend the deadline for discovery so that she could take depositions if the defendant decided to pursue a trial and she spent time educating the defendant about the case.

These findings are amply supported by the record. We agree with the trial court's conclusion that there is no basis upon which to conclude that trial counsel's performance was deficient. *See State v. Faragi*, 127 N.H. 1, 5, 498 A.2d 723, 726 (1985) (noting "strong presumption" that counsel's conduct was not deficient).

The defendant has failed to demonstrate that his trial counsel's assistance was ineffective. Accordingly, he has demonstrated no manifest injustice from the trial court's denial of his motion to

withdraw his guilty pleas. *LaRoche*, 117 N.H. at 131, 370 A.2d at 633.

*Affirmed.*

All concurred.